12 April 2000

No. 2--99--0325 

_________________________________________________________________

 IN THE

 APPELLATE COURT OF ILLINOIS

 SECOND DISTRICT

_________________________________________________________________

SHARON NILA and DEBORAH KUYKENDALL, as Co-ex'rs of the Estate of Patricia Scarff, Deceased, and JENNIFER MYRA,

Plaintiffs-Appellees,

v.

HARTFORD INSURANCE COMPANY OF THE MIDWEST, 

Defendant-Appellant.

)

)

)

)

)

)

)

)

)

)

)

)

)

Appeal from the Circuit Court of Kane County.

No.  97--MR--369

Honorable

Patrick J. Dixon,

Judge, Presiding._________________________________________________________________

JUSTICE COLWELL delivered the opinion of the court:

Defendant, Hartford Insurance Company of the Midwest (Hartford), appeals an order of the circuit court of Kane County granting summary judgment in favor of plaintiffs, Sharon Nila and Deborah Kuykendall, as co-executors of the estate of Patricia Scarff, and Jennifer Myra.  The circuit court found that an automobile insurance policy delivered to Patricia did not include uninsured motorist coverage in an amount equal to the insured’s bodily injury liability limits as required by section 143a-2 of the Illinois Insurance Code (Code) (215 ILCS 5/143a-2 (West 1994)) and that Patricia never specifically rejected uninsured motorist coverage equal to the liability limits of the policy.  Therefore, the court reformed the policy to provide uninsured motorist coverage equal to the bodily injury liability limits of the policy.

On appeal, we must determine whether a surviving wife is bound by her deceased husband’s initial rejection of additional uninsured motorist coverage where the insurer later issues an automobile liability policy to the surviving wife as the sole named insured for a term beyond the husband’s last policy renewal.

I.  BACKGROUND

In January 1987, Raymond Scarff contacted Hartford to procure information regarding the insurer’s automobile insurance program with the American Association of Retired Persons (AARP).  At the time, Raymond resided with his wife, Patricia.  Hartford sent Raymond a quotation package in the mail.  The quotation package contained a cover letter, a quotation, a sheet entitled "Your Choices in Illinois," an application, and a special credits certification form.  The quotation listed four different coverage limits for each category of coverage along with their corresponding annual premiums.  Information regarding the nature of uninsured motorist coverage was located on the reverse side of the quotation page as well as on the sheet entitled "Your Choices in Illinois."

The back of the application contained space for the applicant to select a payment plan and the desired amount of basic coverage, uninsured/underinsured motorist coverage, and uninsured motorist property damage coverage.  The uninsured/underinsured motorist coverage selection section provided:

"UNINSURED/UNDERINSURED MOTORISTS COVERAGE 

Uninsured Motorists/Underinsured Motorists Coverage is required in Illinois.  Uninsured Motorist Property Damage Coverage is optional.  The choice that you make below will apply to any policy which renews, extends, changes, supercedes or replaces your existing policy or any policy for which you may be applying.

□ Maximum amount available (an amount equal to the liability limit of your policy)

The following specific amount $_____

Minimum amount available."

Raymond selected bodily injury limits of $100,000 per person and $300,000 per occurrence ($100,000/$300,000), and he opted for the minimum amount of uninsured/underinsured motorist coverage.  Raymond signed and dated the application and submitted it to Hartford.

Hartford issued policy No. 55PHA501263 effective March 1, 1987.  The policy contained bodily injury liability limits of $100,000/$300,000 and uninsured/underinsured motorist limits of $15,000 per person and $30,000 per occurrence ($15,000/$30,000). Raymond was the named insured under the policy while both Raymond and Patricia were listed as drivers.  The policy defined the terms "you" and "your" as used in the policy to include the named insured and "[t]he spouse if a resident of the same household [as the named insured]."  Attached to the policy as an endorsement was a "Lifetime Continuation Agreement," in which Hartford promised to renew the policy as long as the insured satisfied certain requirements.

Raymond renewed the policy annually effective March 1 of the years 1988, 1989, 1990, 1991, 1992, 1993, and 1994.  The uninsured motorist coverage under Raymond’s policy was increased to $25,000 per person and $50,000 per occurrence effective March 1, 1988.  However, uninsured motorist coverage was decreased to $20,000 per person and $40,000 per occurrence ($20,000/$40,000) with the policy effective March 1, 1990.  Raymond died on April 9, 1994.

Following Raymond’s death, an endorsement to the policy effective April 19, 1994, deleted Raymond as a driver and changed Patricia’s marital status to widowed.  An endorsement effective July 9, 1994, replaced coverage for a 1989 Chrysler with coverage for a 1995 Plymouth.  An endorsement effective July 18, 1994, replaced Raymond with Patricia as the named insured on the policy.

Thereafter, Patricia purchased a one-year policy of insurance from Hartford effective March 1, 1995.  Patricia did not complete an application for the policy, and the policy was assigned the same number as the policy initially issued to Raymond.  Further, the policy had the same bodily injury liability limits ($100,000/$300,000) and uninsured motorist limits ($20,000/$40,000) as the policy renewed by Raymond on March 1, 1994.  Patricia renewed the policy for a one-year term effective March 1, 1996.  It is uncontested that Patricia never specifically rejected uninsured motorist coverage in an amount equal to the bodily injury liability limits of her policy.

On July 22, 1996, Patricia was fatally injured when the car she was driving was struck by a vehicle driven by an uninsured motorist.  Jennifer Myra, a passenger in Patricia’s vehicle, was seriously injured in the collision.  Pursuant to the terms of the policy issued to Patricia on March 1, 1996, Hartford paid uninsured motorist benefits of $20,000 each to Myra and to Patricia’s estate.  Hartford rejected plaintiffs’ request to reform the uninsured motorist limits to $100,000/$300,000.

On October 15, 1997, plaintiffs filed a complaint for declaratory judgment in the circuit court of Kane County.  Plaintiffs complained that Hartford failed to offer Patricia uninsured motorist coverage equal to the bodily injury liability limits of her policy.  Plaintiffs sought to reform the insurance policy issued to Patricia to provide uninsured motorist limits of $100,000/$300,000.  Both parties filed cross-motions for summary judgment.

The circuit court granted plaintiffs’ motion for summary judgment and denied defendant’s motion.  The basis for the court’s decision was that, pursuant to Part F of the contract for insurance, coverage for Patricia was dependent upon her relationship to Raymond.  For Patricia to remain insured, she had to remain Raymond’s spouse and reside in the same household as Raymond.  Following Raymond’s death, Patricia no longer occupied the status of spouse residing in the same household.  Pursuant to the terms of the insurance policy, Hartford was obligated to extend coverage for a surviving spouse only until the end of the policy period (March 1, 1995).

The court also observed that the first time that Patricia was responsible for decisions as to the type and amount of coverage was when she purchased coverage beginning March 1, 1995.  Patricia never specifically rejected uninsured motorist coverage equal to the bodily injury limits of her policy as required by section 143a-

2 of the Code.  Accordingly, the court reformed the policy to provide uninsured motorist coverage of $100,000/$300,000, an amount equal to the bodily injury limits of Patricia’s policy.  The circuit court denied defendant’s motion for reconsideration, and this timely appeal followed.

ANALYSIS

Standard of Review

A
 motion for summary judgment should be granted only when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.  
Purtill v. Hess
, 111 Ill. 2d 229, 240 (1986).  
Our review of an order granting summary judgment is 
de novo
.  
American Country Insurance Co. v. Kraemer Brothers, Inc.
, 298 
Ill. App. 3d
 805, 810 (1998).  This court may affirm summary judgment on any basis found in the record.  
Monticello Insurance Co. v. Wil-Freds Construction, Inc.
, 277 Ill. App. 3d 697, 701 (1996).

Discussion

The issue we are asked to consider is whether a surviving wife is bound by her deceased husband’s initial rejection of additional uninsured motorist coverage where the insurer later issues an automobile liability policy to the surviving wife as the sole named insured for a term beyond the husband’s last policy renewal.  The resolution of this issue requires us to focus on a rather narrow inquiry, 
i.e.
, whether the policy issued to the surviving wife was a new policy of insurance or a renewal of the policy initially issued to the husband.  If we find that the policy issued to the surviving wife was a new one, the insurer was required to provide the surviving wife with uninsured motorist coverage equal to the bodily injury liability limits of her policy unless the surviving wife specifically rejected such coverage.  However, if we find that the policy issued to the surviving wife was a mere renewal, then the surviving wife was bound by her husband’s initial rejection of additional uninsured motorist coverage.

Whether the policy issued to Patricia was a "renewal" involves the interpretation of section 143a-2 of the Code (215 ILCS 5/143a-2 (West 1994)).  The applicable version of section 143a-2 provides in pertinent part:

"§ 143a-2.  (1) Additional uninsured motor vehicle coverage.  No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be renewed or delivered or issued for delivery in this State with respect to any motor vehicle designed for use on public highways and required to be registered in this State unless uninsured motorist coverage as required in Section 143a of this Code is included in an amount equal to the insured’s bodily injury liability limits unless specifically rejected by the insured.  Each insurance company providing the coverage must provide applicants with a brief description of the coverage and advise them of their right to reject the coverage in excess of the limits set forth in Section 7-203 of the Illinois Vehicle Code.  The provisions of this amendatory Act of 1990 apply to policies of insurance applied for after June 30, 1991.

(2) Right of rejection of additional uninsured motorist coverage.  After June 30, 1991, every application for motor vehicle coverage must contain a space for indicating the rejection of additional uninsured motorist coverage.  No rejection of that coverage may be effective unless the applicant signs or initials the indication of rejection.  The applicant may reject additional uninsured motorist coverage in excess of the limits as set forth in Section 7-203 of the Illinois Vehicle Code.  In those cases, including policies first issued before July 1, 1991, where the insured has elected to purchase limits of uninsured motorist coverage which are less than bodily injury liability limits or to reject limits in excess of those required by law, the insurer need not provide in any renewal, reinstatement, reissuance, substitute, amended, replacement or supplementary policy, coverage in excess of that elected by the insured in connection with a policy previously issued to such insured by the same insurer unless the insured subsequently makes a written request for such coverage.

(3) The original application indicating the applicant’s selection of uninsured motorist coverage limits shall constitute sufficient evidence of the applicant’s selection of uninsured motorist coverage limits and shall be binding on all persons insured under the policy."  215 ILCS 5/143a-2 (West 1994).

The overriding objective in interpreting a statute is to ascertain and give effect to the intent of the legislature.  
Roser v. Anderson
, 222 
Ill. App. 3d
 1071, 1075 (1991).  
To ascertain the legislature’s intent, we first look to the plain language of the statute.  
Burnett v. Safeco Insurance Co.
, 227 Ill. App. 3d 167, 173 (1992).  Language is to be given its ordinary and popularly understood meaning.  
Roser
, 222 Ill. App. 3d at 1075.  In addition to the language so chosen by the legislature, the court should consider the reason for the law, the evil to be remedied, and the purpose to be obtained thereby.  
Roser
, 222 Ill. App. 3d at 1075.  With these principles in mind, we begin our examination of the uninsured motorist statute.

In Illinois, uninsured motorist coverage is governed principally by sections 143a and 143a-2 of the Code (215 ILCS 5/143a, 143a-2 (West 1998)).  Section 143a provides that every automobile liability insurance policy renewed, delivered, or issued for delivery in Illinois for any motor vehicle registered or principally garaged in this state must provide coverage for bodily injury or death caused by an uninsured or hit-and-run vehicle.  Uninsured motorist coverage must be at least in an amount set forth in section 7-203 of the Illinois Vehicle Code (625 ILCS 5/7-203 (West 1998)).  Currently, the financial responsibility limits set forth in section 7-203 are $20,000 per person and $40,000 per occurrence.  625 ILCS 5/7-203 (West 1998).

Section 143a-2 of the Code currently requires insurers to 
include
 in each automobile liability policy uninsured motorist coverage equal to the bodily injury liability limits of the policy unless specifically rejected by the insured.  215 ILCS 5/143a-2 (West 1998).  However, it was not until section 143a-2 was amended in 1990 (the 1990 amendments) that section 143a-2 as we know it came into being.  Indeed, when Hartford issued the policy to Raymond in 1987, insurers were not required to include in every policy additional uninsured motorist coverage.  Rather, insurers were only required to 
offer
 insureds uninsured motorist coverage "in an amount up to the insured’s bodily injury liability limits."  Ill. Rev. Stat. 1985, ch. 73, par. 755a-2(1).  It was the responsibility of the "named insured" to "elect to purchase limits of uninsured motorist coverage in an amount up to the bodily injury liability limits on the insured motor vehicle or reject the offer of additional uninsured motorist coverage" provided that the uninsured motorist coverage maintained on the insured vehicle was not less than the statutorily mandated minimum.  Ill. Rev. Stat. 1985, ch. 73, par. 755a-2(2).

Illinois courts have long recognized that the purpose of the uninsured motorist statute is to place the insured in substantially the same position he would occupy if the uninsured driver had been minimally insured.  
Reed v. Farmers Insurance Group
, 188 Ill. 2d 168, 177 (1999); 
Luechtefeld v. Allstate Insurance Co.
, 167 Ill. 2d 148, 152 (1995); 
Squire v. Economy Fire & Casualty Co.
, 69 
Ill. 2d
 167, 176 (1977); 
Putnam v. New Amsterdam Casualty Co.
, 48 
Ill. 2d
 71, 89 (1970); 
Makela v. State Farm Mutual Automobile Insurance Co.
, 147 Ill. App. 3d 38, 42 (1986).

In 
Tucker v. Country Mutual Insurance Co.
, 125 Ill. App. 3d 329 (1984), the court conducted an extensive review of the legislative history behind the uninsured and underinsured motorist statute.  The 
Tucker
 court found that statutory language requiring an offer of uninsured and underinsured motorist coverage and creating a right of election demonstrated that the legislature intended insurers to provide insureds with sufficient information so that they may make an intelligent decision regarding their insurance coverage.  
Tucker
, 125 Ill. App. 3d at 334.  The 
Tucker
 court found support for its finding in the comments of Senator Berman, who stated, " '[W]hat we’re saying is that it is going to be up to the insured 
upon being advised as to what is available to him to decide what he wants to buy
 and what he wants to pay for *** and I’m sure that the [D]epartment [of Insurance] will require them to [
sic
] in the policy forms, 
to spell out what they are offering, what is being paid for and what the coverage is
.  Without this kind of clarifying language, you’re going to find 
some companies
 charging more for coverage that the insured doesn’t want *** or on the other hand, 
not offering what the insured is willing to pay for
.' "  (Emphasis in original.)  
Tucker
, 125 Ill. App. 3d at 334, quoting 81st Ill. Gen. Assem. Senate Proceedings, June 27, 1980, at 73
 (statements of Senator Berman).

In 
Cloninger v. National General Insurance Co.
, 109 Ill. 2d 419 (1985), our supreme court synthesized the long-standing purpose behind underinsured motorist coverage with the 
Tucker
 court’s determination that the legislature intended that all insureds should be given the opportunity to intelligently elect or reject excess uninsured and underinsured motorist coverage.  After noting the legislature’s concern that injured parties be adequately compensated, the 
Cloninger
 court stated:

"The legislature not only required that underinsured-motorist coverage be offered but also provided that the insured had a right to elect or reject such coverage. [Citation.] 
The right to elect or reject such coverage requires that the insured have information regarding the coverage
. [Citation.] Therefore, 
we believe that the legislature intended that the 'offer' mandated in section 143a-2(3) provide the insured with enough information regarding underinsured-motorist coverage to allow the insured to make an intelligent decision of whether such coverage should be elected or rejected
.  Such an intelligent decision cannot be made unless an explanation of the coverage is supplied. [Citation.]" (Emphasis added.)  
Cloninger
, 109 Ill. 2d at 424-25.

While the issues in 
Cloninger
 and 
Tucker
 involved offers of underinsured motorist coverage, we note that the same rationale has been applied to offers of uninsured motorist coverage, as both offers are part of the same statutory scheme.  See 
Roser
, 222 Ill. App. 3d at 1078.

That Illinois courts have correctly interpreted the intent behind the uninsured motorist statute was further buttressed by the enactment of the 1990 amendments to section 143a-2.  As noted, in its current state, section 143a-2 requires each automobile liability insurance policy renewed, delivered, or issued for delivery in this state to include uninsured motorist coverage equal to the bodily injury liability limits of the policy unless specifically rejected by the "applicant."  215 ILCS 5/143a-2 (West 1998).  Further, the statute requires insurers to provide "applicants with a brief description of the coverage and advise them of their right to reject the coverage."  215 ILCS 5/143a-2 (West 1998).  This language supports the 
Cloninger
 court’s conclusion that the legislature intended the insured to make an informed and intelligent choice regarding automobile insurance coverage.  The 1990 amendments clarified what had always been the legislature’s intent.  See 
Roser
, 222 Ill. App. 3d at 1078-81.

Keeping the legislative intent of the statute in mind, we turn to the language of the statute itself.  We are called upon to interpret the following portion of section 143a-2(2):

"(2) Right of rejection of additional uninsured motorist coverage.  After June 30, 1991, every application for motor vehicle coverage must contain a space for indicating the rejection of additional uninsured motorist coverage.  No rejection of that coverage may be effective unless the applicant signs or initials the indication of rejection.  The applicant may reject additional uninsured motorist coverage in excess of the limits  set forth in Section 7-203 of the Illinois Vehicle Code.  
In those cases, including policies first issued before July 1, 1991, where the insured has elected to purchase limits of uninsured motorist coverage which are less than bodily injury liability limits or to  reject limits in excess of those required by law, the insurer need not provide in any renewal, reinstatement, reissuance, substitute, amended, replacement or supplementary policy, coverage in excess of that elected by the insured in connection with a policy previously issued to such insured by the same insurer unless the insured subsequently makes a written request for such coverage
." (Emphasis added.)  215 ILCS 5/143a-2 (West 1994).

According to Hartford, the policy issued to Patricia was a renewal policy because (1) there were no gaps in coverage; (2) the policy bore the same number as the policies issued to Raymond; (3) Patricia met the definition of insured under Raymond’s policy because she was his spouse and she resided in the same household as Raymond; (4) the policy issued to Raymond contained a "lifetime continuation" endorsement; and (5) Patricia was substituted as the sole named insured under the policy shortly after Raymond’s death.
 

While the Code defines "renewal" or "to renew" in section 143.13(d) (215 ILCS 5/143.13(d) (West 1994)), that definition, by its own terms, is inapplicable to section 143a-2.  However, a term of well-known legal significance is presumed to have that meaning in a statute.  
Advincula v. United Blood Services
, 176 Ill. 2d 1, 17 (1996); 
People v. Bartlett
, 294 Ill. App. 3d 435, 438 (1998).  The word "renewal" commonly has been defined to mean "[t]he substitution of a new right or obligation for another of the same nature."  Black’s Law Dictionary 1296 (6th ed. 1990).  We find that the policy issued to Patricia in 1995 was not a renewal because it was not the substitution of a new right or obligation for another of the same nature.

Several factors support our conclusion that the policy issued to Patricia was not a renewal.  First, we note that, following Raymond’s death, Patricia substituted a new vehicle for the vehicle that the couple had insured together.  It was the substituted vehicle that was insured under the policy issued to Patricia in 1995.  We concede that if this were the only factor supporting our position, the outcome would be questionable in light of the result reached in 
Makela
, 147 Ill. App. 3d 38 (holding that the addition of a new vehicle under a multiple-vehicle policy does not require a new offer of uninsured motorist coverage).  However, the policy issued to Patricia on March 1, 1995, was a policy in which she was the sole named insured for the first time.  Further, as the circuit court noted, as of March 1, 1995, Patricia, for the first time, became responsible for decisions as to the type and amount of automobile liability insurance coverage.

As discussed in our review of the uninsured motorist statute, the purpose of the uninsured motorist statute is to make certain not only that the insured is minimally insured but also that the insured makes an informed and intelligent decision regarding uninsured motorist coverage.  See 
Cloninger
, 109 Ill. 2d at 424-25.  The adoption of Hartford’s position would frustrate this purpose.  Patricia never had the opportunity to make an informed and intelligent decision regarding uninsured motorist coverage.  Prior to March 1, 1995, Raymond had always made the decision regarding uninsured motorist coverage.

Accordingly, we determine that the policy issued to Patricia in 1995 was a new policy of automobile liability insurance.  As a result, Hartford was required to include in Patricia’s policy uninsured motorist coverage in an amount equal to the policy’s bodily injury liability limits absent the specific rejection of that coverage.  Since it is conceded Patricia never specifically rejected uninsured motorist coverage equal to the bodily injury liability limits of her policy, the circuit court properly reformed the policy to provide uninsured motorist limits of $100,000/$300,000.  We believe that this result comports with the intent behind the uninsured motorist statute as set out in 
Cloninger
.

Parenthetically, we note that section 143a-2 provides:

"In those cases, including policies first issued before July 1, 1991, where the insured has elected to purchase limits of uninsured motorist coverage which are less than bodily injury liability limits or to  reject limits in excess of those required by law, the insurer need not provide in any renewal, reinstatement, reissuance, substitute, amended, replacement or supplementary policy, coverage in excess of that elected by the insured in connection with a policy previously issued to such insured by the same insurer unless the insured subsequently makes a written request for such coverage."  215 ILCS 5/143a-2(2) (West 1994).

Although Hartford limits its argument to whether the policy issued to Patricia constituted a "renewal," Hartford’s failure to argue whether the policy constituted a "reinstatement, reissuance, substitute, amended, replacement or supplementary policy" is irrelevant for purposes of our discussion.  Even if we determined that the policy met the definition of one of the aforementioned terms, Hartford’s failure to provide uninsured motorist coverage equal to the bodily injury liability limits of Patricia’s policy without her specific rejection would run afoul of the intent of section 143a-2.

Relying on 
Messerly v. State Farm Mutual Automobile Insurance Co.
, 277 Ill. App. 3d 1065 (1996), Hartford urges us to reach a contrary result.  However, 
Messerly
 is distinguishable from the instant case.  In 
Messerly
, the husband procured automobile insurance for himself and his wife (the plaintiff) from insurer (the defendant).  The husband was offered, but rejected, the option of purchasing additional uninsured motorist coverage.  The policy was renewed.  Subsequently, the plaintiff was involved in a collision with an uninsured driver.  The plaintiff then filed a declaratory judgment action, asking the court to find that the defendant did not comply with section 143a-2 of the Code since it failed to adequately communicate to her an offer of additional uninsured motorist coverage.

The issue presented to the 
Messerly
 court was whether section 143a-2 of the Code required the insurer to make an offer of additional uninsured motorist coverage to all named insureds under a policy.  The 
Messerly
 court determined that the requirement of section 143a-2 is satisfied if the insurer makes a legally sufficient offer of additional uninsured motorist coverage to one named insured.

Aside from the fact that the issues presented in 
Messerly
 and in this case are different, we note that, 
in 
Messerly
, the insurance policy in effect at the time of the accident was for a term renewed by the plaintiff’s husband.  Further, there was no dispute that the husband was adequately offered additional uninsured motorist coverage pursuant to the requirements of section 143a-2.  Thus, the 
Messerly
 plaintiff sought to recover for a loss occurring to her during a term of a policy obtained by the plaintiff’s husband.

In the instant case, the plaintiffs are not seeking to recover for a loss during a term of a policy obtained by Raymond.  Instead, they are seeking to recover for a loss occurring to Patricia during a term of a policy obtained by Patricia.  Further, there is no dispute that Patricia never rejected uninsured motorist coverage equal to the bodily injury liability limits of her policy.  Indeed, plaintiffs concede that, if Patricia’s accident had occurred during a term of a policy obtained by Raymond, the holding in 
Messerly
 would control and they would be bound by Raymond’s decision to reject additional uninsured motorist coverage.

Hartford asserts that the circuit court 
improperly relied on the transfer provision of Part F of the policy.  Hartford claims that the transfer provision was superseded by the "Lifetime Continuation Agreement."  Hartford further argues that Patricia was bound by the terms of the policy issued to Raymond in 1987, including the "Lifetime Continuation Agreement," because she met the definition of "you" as defined in the policy.  
However, it is well settled that provisions in an insurance policy that contravene the public policy of a statute are unenforceable.  
State Farm Mutual Automobile Insurance Co. v. Villicana
, 181 
Ill. 2d
 436, 442 (1998)  (opinion modified on denial of rehearing); 
Illinois Farmers Insurance Co. v. Cisco
, 178 
Ill. 2d
 386, 392 (1997).  Public policy is found in the constitution, statutes, and judicial decisions of this state.  
American Country Insurance Co.
, 298 
Ill. App. 3d
 at 812.  Since Hartford’s reading of the policy would contravene the intent of the uninsured motorist statute, we decline to accept Hartford’s interpretation of the policy.

Due to our resolution of this cause, we need not address whether the initial offer of uninsured motorist coverage made to Raymond in 1987 complied with the requirements of section 143a-2 of the Code and 
Cloninger
, 109 Ill. 2d 419.

In conclusion, we hold that a surviving wife is not bound by her deceased husband’s initial rejection of additional uninsured motorist coverage where the insurer later issues an automobile liability policy to the surviving wife as the sole named insured for a term beyond the husband’s last policy renewal.  

Therefore, we affirm the judgment of the circuit court of Kane County. 

Affirmed.

McLAREN and RAPP, JJ., concur.