POLSTON, J.
This is an appeal from the trial court’s final judgment arising from the parties’ cross-motions for summary judgment, declaring that each of the appellee estates of Sean Ditmore and Stephanie Ditmore are entitled to uninsured motorist coverage (“UM”) policy limits of $100,000. Because we hold that Sean Ditmore replaced his automobile policy with the same bodily injury liability limits after his former wife elected lower limits of $50,000 per person, pursuant to section 627.727(1), Florida Statutes (2004), we reverse the amount of the trial court’s declaratory final judgment.

I. BACKGROUND

Prior to his marriage with Stephanie, Sean was married to his first wife, Lori Ditmore, and both were insured with State Farm from 1996 until their divorce in 2000. Lori and Sean’s policy included liability coverage of $100,000 for each person, limited by $300,000 for each accident. In June of 1996, Lori elected lower limits for UM coverage, consisting of $50,000 for each person, limited by $100,000 for each accident, non-stacking. Lori and Sean renewed their policy from 1996-2000. During this time, changes were made to them policy, including adding and replacing vehicles, changes to the policy number, and the addition of their daughter as an insured. However, Lori and Sean never changed the liability limits or requested a change to their UM coverage.
In 2000, Lori and Sean were divorced. After the divorce, State Farm issued another insurance policy exclusively in Sean’s name, which covered a new vehicle located at a new address. The policy had the identical liability limits of $100,000/$300, 000 and UM benefits of $50,000/$100,000, but added comprehensive collision coverage, as well as coverage for car rental and *1013 travel expenses. The policy was issued under a new policy number and a different premium was charged. In 2003, Sean substituted a new ear, a 2003 Ford F-250 truck, but kept the same liability policy limits and UM coverage.
On April 22, 2004, Sean and Stephanie were married, but were tragically killed the next day when an underinsured motorist struck them car head on. The accident occurred while they were traveling in Stephanie’s 1997 Ford truck, which was insured by a carrier other than State Farm. Stephanie’s policy on the truck did not have UM coverage. The insurance policy for the tortfeasor tendered its policy limits to Sean and Stephanie’s estates. The policy limits were not enough to cover the loss and the estates filed a claim seeking UM benefits under Sean’s State Farm policy.
State Farm denied the claim on the basis of the following exclusionary language for UM coverage found in the policy:
There is no coverage ... for bodily injury to an insured while occupying any vehicle owned by you, your spouse, or any relative if it is not insured for this coverage under this policy. This does not apply to an insured occupying a newly acquired car which has no uninsured motor vehicle coverage applicable to it.
This restriction for UM coverage arose from section 627.727(9)(d), Florida Statutes (2004), which states that policies may provide that “[t]he uninsured motorist coverage provided by the policy does not apply to the named insured or family members residing in her or his household who are injured while occupying any vehicle owned by such insureds for which uninsured motorist coverage was not purchased.”
The estates sued State Farm in separate proceedings, later consolidated by the trial court, seeking UM limits of $50,000 each, pre-judgment interest, costs, and attorney’s fees. State Farm answered in its Third Affirmative Defense that it owed no UM benefits, stating “[ajlthough Stephanie Shaw met the definition of ‘insured’ and the definition of ‘spouse,’ the vehicle occupied by her was owned by her (and not Sean Ditmore) and was not insured for uninsured or underinsured motorist coverage under the above-referenced policy issued by Defendant.” State Farm counterclaimed for a declaratory judgment that there is no UM coverage.
The parties filed cross-motions for summary judgment. State Farm argued that its policy language pursuant to 627.727(9)(d) entitled it to summary judgment without paying any UM benefits. The estates argued that the policy exclusion arising from 627.727(9)(d) did not apply because Stephanie’s truck was a “newly acquired car,” an exception to the restrictive language’s application. The trial court held that the marriage did not render Stephanie’s car a newly acquired vehicle under the policy, and that ruling is not contested on appeal. However, the trial court held that Stephanie was an insured under Sean’s State Farm policy, and therefore, “coverage would initially exist,” subject to any further argument regarding the application of any UM coverage exclusions.
Thereafter, the estates moved for amended summary judgment on the basis that the UM exclusion signed by Lori was not effective against Sean and Stephanie. The trial court agreed with the estates and held that State Farm failed to obtain a valid UM exclusion under section 627.727(9)(d).
The trial court also found Lori’s election of lower limits, although binding on all insureds at that time pursuant to section 627.727(1), was not binding on Sean or Stephanie because a new policy was issued *1014 solely to Sean, after his divorce from Lori in 2000, on a new vehicle, at a new address, and with new coverages. The court ruled:
The Court further finds that the new policy issued exclusively to Sean Dit-more by State Farm was not merely a renewal, extension, changing, superseding, or replacement of an existing policy with the same bodily injury limits. This policy represented a newly issued policy, or at the very least amounted to such a material change to the policy as to require State Farm to obtain a new UM coverage rejection form signed by the actual insured, Sean Ditmore. See Allstate Ins. Co. v. Kaneshiro, 93 Hawai’i 210, 998 P.2d 490, 500-01 (2000).
Accordingly, the trial court ruled that UM benefits were the same as the $100,000/ $300,000 liability limits, so that UM benefits of $100,000 was available to the estate of Sean Ditmore, and $100,000 available to the estate of Stephanie Ditmore. State Farm appealed the trial court’s ruling that Lori’s election of the lower UM benefits of $50,000 was not effective.
Although State Farm denied the claims and defended in the trial court on the basis that no UM benefits were due. because of the policy’s exclusionary language pursuant to 627.727(9)(d), it makes no argument in its initial brief that no benefits are due because of this language in the policy. At oral argument, State Farm reiterated that it was only seeking a ruling that the reduced UM limits of $50,000 were available, and that it was not taking a position that no benefits were due. Accordingly, we do not address the trial court’s ruling that State Farm failed to obtain a valid UM exclusion under section 627.727(9)(d), because it is not at issue.[1]

II. ANALYSIS

State Farm argues on appeal that the trial court erred by ruling Lori’s election of reduced UM coverage was ineffective against the claims by the estates. We agree with State Farm that Lori’s election of reduced UM coverage remained in effect because the policy was replaced with the same bodily injury liability limits, pursuant to section 627.727(1), Florida Statutes (2004).[2] Section 627.727(1) states in pertinent part:
When an insured or lessee has initially selected limits of uninsured motorist coverage lower than her or his bodily injury liability limits, higher limits of 'uninsured motorist coverage need not be provided in or supplemental to any other policy which renews, extends, changes, supersedes, or replaces an existing policy with the same bodily injury liability limits unless an insured requests higher uninsured motorist coverage in writing. The rejection or selection of lower limits shall be made on a form approved by the office.... If this form is signed by a named insured, it will be conclusively presumed that there was an informed, knowing rejection of coverage or election of lower limits on behalf of all insureds.'
§ 627.727(1), Florida Statutes (2004) (emphasis added). See Bell v. Progressive Specialty Ins. Co., 744 So.2d 1165, 1166 (Fla. 1st DCA 1999) (holding that “[b]e-cause the policy Ms. Bell purchased from Bayside replaced the policy previously is *1015 sued by Progressive Specialty at the same bodily injury liability limits, Bayside was entitled to rely on Ms. Bell’s previous written rejection of uninsured motorist coverage.”).
Contrary to the trial court’s ruling, Sean’s divorce from Lori did not require a new UM coverage offer by State Farm. In Atlanta Casualty Co. v. Evans, 668 So.2d 287 (Fla. 1st DCA 1996), this court reversed the trial court’s determination that there was not a valid written rejection of UM coverage because it was previously rejected by an ex-spouse. During the marriage between Ms. Evans and Mr. Brinson, Mr. Brinson signed a form rejecting UM coverage. After their divorce, Ms. Evans renewed the policy, and deleted Mr. Brinson as a named insured, and made a name change. Id. at 288. The insurance company did not offer Ms. Evans UM coverage or obtain a written rejection of the coverage from her. Thereafter, Ms. Evans and her minor children were injured in an automobile accident in which an uninsured motorist was at fault. Id. The court noted that Mr. Brinson rejected the UM coverage on behalf of all insureds, and that the policy was renewed with “the same bodily injury liability limits” as the previous policy. Id. at 289. Therefore, based on the plain language of the policy, the court determined that judgement should have been entered in favor of the insurance company. Id.
As in Atlanta Cas'ualty, Lori Ditmore elected reduced UM coverage on behalf of all insureds, and that policy was replaced with “the same bodily injury liability limits” as the previous policy. The divorce between Lori and Sean makes no difference in applying section 627.727(1).
The court in Atlanta Casualty also quoted from the Florida Supreme Court’s decision of American Fire & Indemnity Co. v. Spaulding, 442 So.2d 206, 208 n. 4 (Fla.1983), indicating the current statute eliminates “any possibility that this section will again be interpreted as requiring an offer of uninsured motorist coverage with every ‘material’ policy change.” Id. at 289. Therefore, the trial court’s ruling that the policy changes, “at the least amounted to such a material change to the policy as to require State Farm to obtain a new UM coverage rejection form signed by the actual insured, Sean Ditmore,” citing the Hawaii case of Allstate Insurance Co. v. Kaneshiro, is contrary to Florida law.
Changes to policies, or them replacement, that do not affect bodily injury liability limits do not require a new UM election. See Gasch v. Harris, 808 So.2d 1260 (Fla. 4th DCA 2002) (noting that substituting automobiles is a renewal of an existing policy), Gov’t Employees Ins. Co. v. Stafstrom, 668 So.2d 631 (Fla. 5th DCA 1996) (same); Coney v. Gen. Ins. Co., 445 So.2d 671 (Fla. 3d DCA 1984) (adding collision coverage does not require a new UM election); Nationwide Mut. Fire Ins. Co. v. Hild, 818 So.2d 714 (Fla. 2d DCA 2002) (adding new car to policy does not require UM election), and Graham v. United Servs. Auto. Ass’n, 459 So.2d 484 (Fla. 1st DCA 1984) (adding minor child to policy does not require new UM election). Compare Belmont v. Allstate Ins. Co., 721 So.2d 436 (Fla. 5th DCA 1998) (ruling that a new UM election was required after liability limits were increased); Nat’l Am. Ins. Co. v. Baxley, 578 So.2d 441 (Fla. 1st DCA 1991) (ruling that because there was a gap in coverage, there was no 627.727(1) replacement policy).
The estates acknowledge that Sean’s divorce and the various changes to the policy do not individually require a new UM election. However, they argue that it is the cumulative effect of the various changes to the policy that causes it to be a “new” policy instead of a replacement policy as argued by State Farm. We find *1016 no basis in their “cumulative effect” argument in any statutory language, or in any case construing 627.727(1).
The Florida Legislature stated, in section 627.727(1), that when lower UM limits have been selected, “higher limits of uninsured motorist coverage need not be provided in or supplemental to any other policy which renews, extends, changes, supersedes, or replaces an existing policy with the same bodily injury limits unless an insured requests higher uninsured motorist coverage in writing.” (Emphasis added). The language used within the statute specifically provides for changes to be made to the policy without a required new offering of UM coverages. The statute uses broad terms, including “replacement,” so that numerous changes to the policy may be effected without requiring a new election for UM coverage. Cf. St. Paul Fire and Marine Ins. Co. v. Valdivia, 771 So.2d 1229 (Fla. 3d DCA 2000) (holding that a replacement policy is not required to have exactly the same coverages as the predecessor policy).
As in Bell v. Progressive Specialty Ins. Co., 744 So.2d 1165 (Fla. 1st DCA 1999), because the policy Sean purchased from State Farm replaced the policy previously issued to him, during his marriage to Lori, at the same bodily injury liability limits, State Farm was entitled to rely on Lori’s previous written election of reduced uninsured motorist coverage.

Conclusion

Because we hold that Sean Ditmore replaced his automobile policy with the same bodily injury liability limits after his former wife elected lower limits of $50,000 per person, pursuant to section 627.727(1), Florida Statutes (2004), we reverse the amount of the trial court’s final judgment. The estates are entitled to UM benefits of $50,000 each, rather than $100,000 each as declared by the trial court.
REVERSED.
THOMAS and ROBERTS, JJ., concur.

. See Dep't of Highway Safety and Motor Vehicles v. Brandenburg, 891 So.2d 1071, 1072 & n. 1 (Fla. 5th DCA 2004) (declining to address issues not raised on appeal); Mapp v. Armco Specialty Steel Div., 543 So.2d 1296 (Fla. 1st DCA 1989) (same).

. Our standard of review is de novo. See State Farm Mut. Auto. Ins. Co. v. Parrish, 873 So.2d 547, 549 (Fla. 5th DCA 2004) (ruling that the court's interpretation of the insurance policy for UM coverage was subject to de novo standard of review).