No. 2-08-0639    Filed: 3-23-10    Corrected 4-14-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| CYNTHIA NICHOLSON, as Executor of the Estate of Hildegard Janota, Deceased, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 05--MR--1294 |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | ) ) ) | Honorable Bonnie M. Wheaton, |
| Defendant-Appellant. | ) ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the opinion of the court:

In this case arising from an automobile accident, the parties dispute the nature of the obligation imposed on the defendant, State Farm Mutual Automobile Insurance Company (State Farm), pursuant to section 143a--2 of the Illinois Insurance Code (Code) (215 ILCS 5/143a--2 (West 1998)), to offer its insureds an opportunity to elect higher limits for uninsured motorist coverage. The parties filed cross-motions for summary judgment on this issue, and the trial court entered judgment in favor of the plaintiff, Cynthia Nicholson, as executor of the estate of Hildegard Janota. The defendant appealed. We affirm.

BACKGROUND

Hildegard and Jan Janota first took out a policy with the defendant on March 17, 1988. The vehicle insured was a 1988 Oldsmobile, and the policy provided for bodily injury liability (liability)

coverage with limits of $100,000 per person and uninsured motorist (UM) coverage with limits of $50,000 per person. At the same time, Jan Janota signed a coverage selection form containing a brief explanation of UM and underinsured motorist coverage, and stating that the Janotas had been provided with the opportunity to purchase UM coverage in an amount equal to their liability coverage but that they instead had selected coverage with limits of $50,000 per person. In 1997, the Janotas changed the car insured to a 1997 Oldsmobile. The policy was renewed each year with no other changes until 1999.

On September 14, 1999, the Janotas requested an increase in their coverage to $250,000 per person in liability limits and $100,000 in UM limits. The defendant's computer system referred to this request as an "application." As a result of the increased coverage, their six-month premiums rose from $125.40 to $146.40. The defendant subsequently requested that the Janotas sign a new coverage selection form but, for reasons unknown, the form was not signed until November 6, 1999. Nevertheless, the defendant issued the Janotas a policy in the requested coverage amounts effective September 17, 1999. On August 21, 2003, the car insured was once again changed, this time to a 2003 Buick. There were no other changes to the policy at that time.

On November 19, 2003, the Janotas were fatally injured in a motor vehicle accident involving the Buick. The plaintiff made a UM claim for $250,000. The defendant paid the plaintiff $100,000 and denied the remainder of the claim. The plaintiff subsequently filed a complaint seeking reformation of the policy to include UM limits of $250,000, based upon the defendant's alleged failure to comply with the provisions of section 143a--2 of the Code (215 ILCS 5/143a--2 (West 2002)), which require insurers to offer UM coverage up to the limits of liability coverage on every policy unless the insured timely rejects such equal coverage. After discovery, the parties filed cross-motions

for summary judgment. On June 17, 2008, the trial court granted the plaintiff's motion for summary judgment and reformed the policy. The defendant's motion for summary judgment was denied. The defendant filed a timely notice of appeal.

ANALYSIS

On appeal, the defendant contends that the trial court erred in granting the plaintiff's motion for summary judgment and denying its own motion for summary judgment. The defendant argues that, under the statute, "applicants" are the only persons who must be advised and make an election concerning their right to purchase UM coverage up to the limits of liability coverage. As the Janotas were already insured by the defendant at the time of their 1999 increase in coverage and premiums, the defendant argues that they were not "applicants" and it therefore had no duty to obtain a timely written rejection of UM coverage equal to their liability coverage. The plaintiff contends that the 1999 changes constituted a new policy and that the statute therefore required the defendant to obtain a written rejection of equal coverage.

Summary judgment is proper when the pleadings, depositions, and affidavits demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2--1005(c) (West 2006); American Family Mutual Insurance Co. v. Jeris, 376 Ill. App. 3d 1070, 1073 (2007). The grant of summary judgment, as well as the underlying issue of statutory construction, is reviewed de novo. Lee v. John Deere Insurance Co., 208 Ill. 2d 38, 43 (2003).

In Illinois, the offer of UM coverage is governed principally by section 143a--2 of the Code, which in 1999 (when the Janotas increased their coverage) provided, in relevant part:

"(1) Additional uninsured motor vehicle coverage. No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be renewed or delivered or issued for delivery in this State with respect to any motor vehicle designed for use on public highways and required to be registered in this State unless uninsured motorist coverage as required in Section 143a of this Code is included in an amount equal to the insured's bodily injury liability limits unless specifically rejected by the insured. Each insurance company providing the coverage must provide applicants with a brief description of the coverage and advise them of their right to reject the coverage in excess of the limits set forth in Section 7--203 of the Illinois Vehicle Code. The provisions of this amendatory Act of 1990 apply to policies of insurance applied for after June 30, 1991.

(2) Right of rejection of additional uninsured motorist coverage. After June 30, 1991, every application for motor vehicle coverage must contain a space for indicating the rejection of additional uninsured motorist coverage. No rejection of that coverage may be effective unless the applicant signs or initials the indication of rejection. The applicant may reject additional uninsured motorist coverage in excess of the limits set forth in Section 7--203 of the Illinois Vehicle Code. In those cases, including policies first issued before July 1, 1991, where the insured has elected to purchase limits of uninsured motorist coverage which are less than bodily injury liability limits or to reject limits in excess of those required by law, the insurer need not provide in any renewal, reinstatement, reissuance, substitute, amended, replacement or supplementary policy, coverage in excess of that elected by the insured in connection with a policy previously issued to such insured by the same insurer unless the

insured subsequently makes a written request for such coverage." (Emphasis added.) 215 ILCS 5/143a--2 (West 1998).[1]

In this case, the parties dispute whether the 1999 increase in coverage and premiums constituted a new policy involving a new "application" or was simply a "renewal" of the previous policy as those terms are used in section 143a--2. The plaintiff argues that the 1999 coverage increase was a sufficiently substantial change that it resulted in a new policy, thereby triggering the defendant's statutory duty to offer the Janotas equal UM coverage and obtain a signed rejection of such coverage before it could issue them a policy that did not have equal coverage. The defendant concedes that the November 6, 1999, rejection signed by the Janotas was not effective to modify the policy it issued to them in September 1999 (Lee, 208 Ill. 2d at 51), but it argues that it had no statutory obligation to obtain a rejection prior to issuing the policy, because the statute requires this only for first-time applicants.

As a preliminary matter, we cannot accept the defendant's attempt to limit the protections of section 143a--2 to first-time applicants, because the language of the statute discloses an intent to apply its protections to renewals as well as first-time policies. In construing a statute, our task is to

---

[1]Section 143a--2 was amended in 2004, but as the Janotas' accident occurred in 2003, those amendments do not apply here. Although subsection (1) of the version of the statute quoted here states that it applies only to policies issued after June 30, 1991, both parties agree that this version governs our analysis. The plaintiff contends that this is the relevant version of the statute because it was the version in effect in 1999, when, the plaintiff contends, material changes occurred to the policy. The defendant agrees, perhaps because it focuses on the language of subsection (2) relating to renewals, which states that it applies to "policies first issued before July 1, 1991."

"ascertain and give effect to the legislature's intent." Lieb v. Judges' Retirement System, 314 Ill. App. 3d 87, 92 (2000). The best indicator of the legislature's intent is the plain language of the statute. Lee, 208 Ill. 2d at 43. Here, the language of the statute speaks of both "applicants" and "insureds" in outlining the obligations of insurance companies to offer additional UM coverage beyond the minimum amount required by section 7--203 of the Illinois Vehicle Code (625 ILCS 5/7--203 (West 1998)).

Subsection (1) establishes the general rule that no automobile liability insurance policy "shall be renewed or delivered or issued for delivery in this State" unless UM coverage equivalent to the liability coverage is included, "unless specifically rejected by the insured." (Emphases added.) 215 ILCS 5/143a--2(1) (West 1998). This language, with its statement that the rule applies to policies that are "renewed" and its references to "the insured," clearly expresses a legislative intent to include current policyholders, not just first-time applicants, within the statute's ambit. The following sentence, however, uses the word "applicant" in laying out the method by which insurers must meet their obligation: "Each insurance company providing the coverage must provide applicants with a brief description of the coverage and advise them of their right to reject" the extra coverage. 215 ILCS 5/143a--2(1) (West 1998). The placement of this sentence immediately following references to "renewal" and the "insured" indicates that the legislature did not intend to exclude current policyholders from the meaning of "applicants." Instead, "applicants" are those in the process of applying for any policy, whether it is a first-time policy or a policy intended to take effect when the current policy expires.

The defendant argues that the statutory language reveals an intent to treat "applicant" and "insured" as mutually exclusive terms, with "applicant" referring only to a person applying for

insurance for the first time, and "insured" referring only to a current policyholder. In support, the defendant cites this court's decision in Wood v. National Liability & Fire Insurance Co., 324 Ill. App. 3d 583 (2001), and the supreme court's decision in Lee, 208 Ill. 2d at 43.

In Wood, we considered whether an insured's rejection of equal UM coverage, made after the policy was first issued, was effective to discharge the insurer's obligations under section 143a--2. We held that it was not, because section 143a--2 was intended to ensure that persons are provided information regarding the availability of UM coverage above the statutory minimum before they decide the amount of coverage they wish to have. Wood, 324 Ill. App. 3d at 587. In reaching this conclusion, we relied heavily on section 143a--2's use of the word "applicant," to describe the persons to whom insurers must explain UM coverage and from whom insurers must obtain signed rejections, and the word "application," to describe where the space for indicating a rejection of additional UM coverage was to be located. Wood, 324 Ill. App. 3d at 586. Moreover, under the structure of the statute, an insurer may not issue a policy with UM coverage limits lower than those for liability coverage unless the insurer has obtained a signed rejection. Thus, for a rejection to be effective, it must have been received before the policy was issued. Wood, 324 Ill. App. 3d at 587.

We went on to state:

"[I]t is clear that the legislature intended the application process to cease once an insurance policy is issued. In 1990, the legislature modified section 143a--2 so that the word 'applicant' replaced the word 'insured.' [Citation.] Before the change, the 'insured' had the right to elect or reject UM coverage. In its present form, the statute 'leaves no room for doubt as to whom UM coverage must be explained.' [Citation.] We believe that the revision makes it clear that the applicant, not the insured, be provided with a description of the UM

-7-

coverage and that the applicant be given an opportunity to reject the coverage. The alteration is significant because it is the applicant who needs to know the extent and amount of his or her coverage before he or she agrees to enter into a contract of insurance.

On the date the election form was signed, [the insured] was no longer an applicant because he had been issued a policy." (Emphasis in original.) Wood, 324 Ill. App. 3d at 587. The defendant argues that this passage supports its interpretation of the statute, that "applicant" refers only to a person applying for insurance for the first time. Once the first policy is issued, the defendant argues, the person is forever afterward an "insured" rather than an "applicant," and the insurer has no statutory obligation to offer UM coverage equal to liability coverage, or to obtain a signed rejection form, in connection with any policy the insurer may offer to the insured in the future.

The defendant seeks to stretch Wood beyond its limits. The issue in Wood was whether a rejection of coverage form was effective if it was signed after the policy had been issued. We held that it was not, because the application period for any given insurance policy ends when that policy is issued; at that point, the parties' agreement is complete and no new terms may be added. Thus, the person contracting with the insurer is no longer an "applicant" with respect to that policy. We did not address, however, the question of whether a current policyholder--an "insured"--could ever be an "applicant" with respect to a policy issued at some point in the future, and our decision in Wood should not be read as answering this question.

The supreme court's decision in Lee does not offer support for the defendant's view of "applicant" and "insured" as mutually exclusive terms, either. In Lee, the supreme court quoted the above passage from Wood and confirmed that, once a policy is issued, the insured is no longer an "applicant" with respect to that policy. Lee, 208 Ill. 2d at 50. However, it did not address whether

a current policyholder may be an "applicant" with respect to some other policy in the future. Nor did its decision rest primarily on semantic distinctions. Rather, the court held that a rejection form received after the policy had been issued was not effective because, without already having a signed rejection form in hand, "[u]nder the plain language of the statute, [the insurer] could not have lawfully issued the policy without [UM] coverage equal to the bodily injury limits." (Emphasis in original.) Lee, 208 Ill. 2d at 51.

As always, the language of the statute is the best determinant of the legislature's intent. Lee, 208 Ill. 2d at 43. That language refutes the defendant's interpretation of "applicant" as referring solely to one seeking insurance for the first time. The very first sentence of section 143a--2 states that no automobile liability insurance "shall be renewed or delivered or issued for delivery in this State *** unless uninsured motorist coverage as required in Section 143a of this Code is included in an amount equal to the insured's bodily injury liability limits unless specifically rejected by the insured." 215 ILCS 5/143a--2(1) (West 1998). This language expressly contemplates that a person who is already "insured," whose policy is being "renewed," is entitled to choose whether to "specifically reject" equal UM coverage. Under this plain language, the scope of those who must receive the opportunity to select or reject equal UM coverage cannot be limited to first-time applicants.

The defendant argues, however, that subsection (2) of the statute sets out an exception to the rule requiring insurers to offer UM coverage equal to liability coverage and that the exception applies here because it states that equal coverage need not be provided in any "renewal, reinstatement, reissuance, substitute, amended, replacement or supplementary policy." 215 ILCS 5/143a--2(2) (West 1998). In the defendant's eyes, this exception means that it need not offer equal UM coverage on any policy that could possibly be described as a renewal, that is, any policy issued after the first

one. In response, the plaintiff argues that section 143a--2 reflects a legislative intent that, whenever there has been a material change to the terms of the previous policy, the later policy is not simply a renewal or similar continuation of the previous policy but instead must be seen as a new policy, and the insurer must again offer the insured UM coverage equal to the amount of liability coverage.

We agree that, in this regard, the language of the statute is somewhat ambiguous. Subsection (2) exempts renewals and similar subsequent policies from the rule requiring equal UM coverage, but subsection (1) plainly states that the rule applies to policies that are being renewed. All parts of a statute must be read together (J.S.A. v. M.H., 224 Ill. 2d 182, 197 (2007)), and thus we cannot simply ignore one of these provisions in favor of the other. Instead, our task is to read these provisions so that they give effect to the intent of the legislature and, if possible, do not conflict with each other. Chavda v. Wolak, 188 Ill. 2d 394, 402 (1999) ("The legislature is presumed to have intended that statutes relating to a single subject and controlled by a single policy will be consistent and harmonious, and apparent conflicts between [the] two *** will be reconciled if possible"). In construing a statute, we presume that the legislature did not intend to create absurdity, inconvenience, or injustice. J.S.A., 224 Ill. 2d at 197. "Thus, we are not bound by the literal language of a statute if that language produces absurd or unjust results not contemplated by the legislature." In re Donald A.G., 221 Ill. 2d 234, 246 (2006).

Inasmuch as subsection (1) of the statute states that equal UM coverage must be offered in connection with any policy that is "renewed" in Illinois, it is plain that this requirement must apply to at least some renewal policies. Moreover, subsection (2)'s description of the policies exempted from the general rule--renewals, reinstatements, reissuances, replacements, and the like--indicates that in enacting subsection (2) the legislature was concerned with those policies that are essentially

continuations of previous policies or that contain only minor changes. For instance, replacements, reinstatements, and reissuances generally mirror the terms of the original policy with at most a change in the effective date, and renewals generally contain only minor changes in terms such as the dates of coverage or cost of premiums. In addition, subsection (2) contains a further limitation, stating that it applies only when an insured has previously been offered equal UM coverage and has rejected it in favor of some lower coverage. 215 ILCS 5/143a--2(2) (West 1998). We thus read subsection (2) as establishing an exception to the general rule of equal UM coverage that applies only where these two conditions are met: first, the insured has previously rejected equal coverage, and second, there are no substantial changes in the terms of the new policy being issued.

In this case, the Janotas had previously rejected equal UM coverage in 1988. The issue thus becomes whether the 1999 policy, which contained the higher liability and UM coverage limits that the Janotas requested,[2] contained changes that were sufficiently substantial to remove it from the continuations of the previous policy to which subsection (2) applies.

---

[2]In his deposition, the Janotas' insurance agent, Ronald Romer, testified that he could not find the Janotas' file, and the only documents produced by the defendant in connection with the 1999 request for increased liability and UM coverage were printouts of the defendant's computer records and a copy of the November 1999 coverage selection form. However, the defendant does not dispute that the Janotas' request for increased coverage qualified as a "written request for such coverage," as required by section 143a--2(2). To the contrary, on appeal the defendant argues that the communication from the Janotas was, under the statute, a "request" under this provision rather than an "application."

We are not the only Illinois court to have confronted this issue. For instance, in Chatlas v. Allstate Insurance Co., 383 Ill. App. 3d 565, 569 (2008), the court stated that the issue was "when policy changes create a new policy" that would require a new signed rejection of equal coverage. Because the policy before the court was identical (except for the policy number) to the plaintiff's previous policy that had lapsed two days before, the court concluded that the policy was a "reinstatement" under subsection (2) that did not require a new rejection. Chatlas, 383 Ill. App. 3d at 570. Similarly, in Makela v. State Farm Mutual Automobile Insurance Co., 147 Ill. App. 3d 38, 40 (1986), the only change was the addition of a third vehicle to a policy that covered two vehicles. The original policy had a provision stating that any vehicles acquired by the insured would automatically be insured so long as the insurer was notified within 30 days. Looking to foreign law and the terms of the policy before it, the court found that the addition of a vehicle to the policy was not a material change that resulted in a new policy for which a new offer of equal UM coverage was required. Makela, 147 Ill. App. 3d at 49.

By contrast, in Nila v. Hartford Insurance Co. of the Midwest, 312 Ill. App. 3d 811, 820 (2000), we held that the policy at issue was a new policy because of the substantial changes from the previous policy. The first policy was issued solely in the husband's name (although the wife was also insured under the policy), and the husband was the one who signed the rejection of equal UM coverage. After the husband died and the previous policy expired, the insurer issued a policy to the wife for a different vehicle, but did not obtain a coverage selection form from her. Nila, 312 Ill. App. 3d at 814. In considering whether the insurer should have done so, we first looked to the purpose of section 143a--2, which is to provide an insured with the opportunity to make an intelligent and informed decision regarding the amount of UM coverage that he or she wants before entering into

a contract with an insurer. Nila, 312 Ill. App. 3d at 820, citing Cloninger v. National General Insurance Co., 109 Ill. 2d 419, 424-25 (1985). We then held that this statutory purpose would be frustrated if an insured who had never elected any level of UM coverage were issued a policy without having been offered equal UM coverage on the ground that it was simply a continuation of the old policy under subsection (2). Nila, 312 Ill. App. 3d at 820. Thus, the insurer should have offered equal UM coverage to the wife, and its failure to do so meant that reformation of the policy to provide equal coverage was proper. Similarly, in Burnett v. Safeco Insurance Co. of Illinois, 227 Ill. App. 3d 167, 174 (1992), another district of the appellate court held that an insurer's issuance of a policy to a daughter in her own name was a new policy requiring an offer of equal UM coverage, rather than a continuation of her parents' policy, under which she had been a listed driver.

We also take note of the decision in Bronstein v. Ina Life Insurance Co. of North America, 207 Ill. App. 3d 910, 913 (1990), although that case did not involve UM coverage or section 143a--2, because it addresses the same issue we face here: when changes to a policy are sufficiently material that the new policy cannot be viewed as a continuation of the old one. In Bronstein, the court held that a new effective date, new premium, and new benefit level were changes sufficiently material to result in a new policy rather than a continuation of the previous policy. Commenting that the new policy indisputably "required the offer and acceptance" of several new terms, the court held that the new terms represented "material and substantial differences" between the policies, with the result that the second policy could not be considered a continuation of the first. Bronstein, 207 Ill. App. 3d at 913; see also Doe v. Illinois State Medical Inter-Insurance Exchange, 234 Ill. App. 3d 129, 137-38 (1992) (differences in effective dates, premiums, and requirement of regularly updated information

such as current professional standing were "material and significant" such that the later policy was not a continuation of the previous policy).

Like the court in Bronstein, we believe that a change in the level of coverage, with its attendant change in the premium cost, is a material change that results in a new policy rather than a mere continuation of the old policy. In this case, the Janotas' new liability coverage was more than twice their previous coverage, and their new six-month premium was over 15% higher than their old one. The issuance of the 1999 policy thus required the offer and acceptance of substantially new terms. In light of these material changes, the defendant was required to once again offer the Janotas equal UM coverage and to obtain a rejection of that coverage before issuing the Janotas their new policy. Because the defendant did not obtain a signed coverage selection form from the Janotas until after it had already issued the new policy, the selection form was ineffective under Lee and Wood, and the trial court was correct to reform the policy to provide UM coverage equal to the liability coverage.

Our decision is consistent with the purpose of section 143a--2, which was intended as a "source of consumer protection, to ensure that insureds receive information adequate to make an informed decision about coverage." Burnett, 227 Ill. App. 3d at 178. The legislature was concerned that without a mandatory offer of UM coverage, some insurers would not offer what an insured is willing to pay for. Roser v. Anderson, 222 Ill. App. 3d 1071, 1078 (1991). When the liability coverage increases, the insured can obtain higher limits of UM protection than those offered with the original policy, and he or she should be afforded an opportunity to elect that additional coverage.

In addition, although we are not aware of any Illinois case law involving precisely the same facts and statute, our conclusion has support in cases from other states with statutes similar to section

143a--2. For instance, in <u>State Farm Mutual Automobile Insurance Co. v. Arms</u>, 477 A.2d 1060, 1065 (Del. 1984), the Delaware Supreme Court held that changes in the amount of liability coverage and the addition of a new vehicle were sufficiently material to result in a new policy rather than a mere continuation of the old one. Several courts have found changes in the amount of liability coverage to be key in determining that a later policy is a new policy, not a mere continuation of the old. See <u>State Farm Mutual Automobile Insurance Co. v. Shaw</u>, 967 So. 2d 1011, 1015 (Fla. App. 2007) ("Changes to policies, or their replacement, that do not affect bodily injury liability limits do not require a new UM election"); <u>Degruise v. Houma Courier Newspaper Corp.</u>, 94--2386, p. 16 (La. App. 1 Cir. 6/23/95), 657 So. 2d 580, 591 (request for higher liability coverage resulted in a new rather than a "substitute or renewal" policy); <u>May v. National Union Fire Insurance Co. of Pittsburgh, Pennsylvania</u>, 918 P.2d 43, 44 (Okla. 1996) (decrease in amount of liability coverage was a material change that resulted in a new policy); <u>American Commerce Insurance Co. v. Ensley</u>, 153 Wash. App. 31, 38, 220 P.3d 215, 219 (2009) ("changes in coverage levels are material and *** result in a new policy"); <u>Burrows v. Nationwide Mutual Insurance Co.</u>, 215 W. Va. 668, 679, 600 S.E.2d 565, 576 (2004) (under West Virginia statute, the only change that triggers insurer's duty to re-offer equal UM coverage is a change in liability coverage requested by the insured).

The defendant's final contention is that insurers need a bright-line test so that they will know with certainty when they must obtain a new rejection of equal coverage. See <u>Makela</u>, 147 Ill. App. 3d at 49-50 (stressing the need for a bright-line test). We believe that our holding in this case--that, whenever liability coverage is increased above that provided under the previous policy, insurers must again offer UM coverage equal to liability coverage and obtain a signed election declining such equal coverage--offers the nearest approximation to such a test that we can provide.

The trial court did not err in granting summary judgment in favor of the plaintiff and denying the defendant's motion for summary judgment. We affirm the judgment of the circuit court of Du Page County.

Affirmed.

O'MALLEY and JORGENSEN, JJ., concur.