# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Alshwaiyat v. American Service Insurance Co.*, 2013 IL App (1st) 123222

| | |
|---|---|
| Appellate Court Caption | HATEM ALSHWAIYAT, Plaintiff-Appellee, v. AMERICAN SERVICE INSURANCE COMPANY, an Illinois Corporation, Defendant-Appellant (Mojo Enterprises, an Illinois Corporation, Defendant). |
| District & No. | First District, First Division<br>Docket No. 1-12-3222 |
| Filed<br>Rehearing denied | February 19, 2013<br>March 18, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Section 143a-2(2) of the Insurance Code did not require defendant insurer to provide more than the minimum uninsured motorist coverage or underinsured motorist coverage set forth in the original policy issued to plaintiff's employer, either in connection with the endorsement to the original policy increasing the insured's liability limits or the subsequent renewal policy that was in effect at the time of an accident in which plaintiff was injured and his wife died, since plaintiff's employer rejected uninsured motorist coverage and underinsured motorist coverage in excess of the statutory minimum when the original policy was issued and section 143a-2(2) provided an exception to the requirement that the insured reject higher coverage in writing when the policy was renewed after an endorsement increasing the liability limits. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CH-30870; the Hon. Sophia H. Hall, Judge, presiding. |
| Judgment | Reversed; judgment entered. |

| Counsel on Appeal | Sanchez Daniels & Hoffman, LLP, of Chicago (John J. Piegore and Edric S. Bautista, of counsel), for appellant. |
|---|---|
| | Brustin & Lundblad, Ltd., of Chicago (Michael A. Shammas, of counsel), for appellee. |
| Panel | JUSTICE ROCHFORD delivered the judgment of the court, with opinion. |
| | Justices Cunningham and Delort concurred in the judgment and opinion. |

**OPINION**

¶ 1    In this action for declaratory judgment, plaintiff-appellee, Hatem Alshwaiyat, sought a determination that a policy of automobile insurance issued to plaintiff's employer by defendant-appellant, American Service Insurance Company (ASI), provided $500,000 in underinsured motorist coverage for an automobile accident involving both plaintiff and his deceased wife. ASI has appealed from an order entering summary judgment in favor of plaintiff. For the reasons that follow, we reverse.

¶ 2                            I. BACKGROUND

¶ 3    On July 11, 2011, plaintiff filed a complaint for declaratory judgment, naming both ASI and plaintiff's employer, Mojo Enterprises (Mojo), as defendants. In that complaint, plaintiff alleged that on June 17, 2008, he was employed by Mojo as a taxi driver when the automobile he was driving was struck by a vehicle operated by Mr. Robert Pas. As a result of this accident, plaintiff suffered significant physical injuries and his wife, a passenger in the taxi, suffered injuries that resulted in her death. Claims against Mr. Pas for plaintiff's injuries and his wife's wrongful death were ultimately settled for $100,000 each, the liability limits of the insurance policy held by Mr. Pas.

¶ 4    Plaintiff's complaint further alleged that both plaintiff and Mojo were insured under a policy of automobile insurance issued by ASI to Mojo, effective January 1, 2008, through January 1, 2009. That insurance policy was alleged to include $500,000 in liability coverage for bodily injury and property damage. It was further alleged that, due to the fact that uninsured motorist (UM) and underinsured motorist (UIM) coverage in an amount equal to that amount was never rejected by Mojo, "the policy must be construed to provide for $500,000.00 [in] underinsured motorist coverage." Moreover, because ASI had indicated its belief that the insurance policy issued to Mojo did not provide any UIM coverage for the accident, plaintiff's complaint asked the circuit court to make a declaration of the rights of the "interested parties" with respect to the ASI policy and reform that policy to "include underinsured motorist coverage in an amount equal to the bodily injury limit [of] $500,000.00."

¶ 5        The record reflects that ASI was served with summons on July 28, 2010, and filed its appearance in this matter on August 10, 2010. There is no evidence in the record that service upon Mojo was ever attempted or completed, and Mojo never filed an appearance.

¶ 6        ASI filed an answer and affirmative defenses to plaintiff's complaint. Among ASI's defenses was an assertion that in Mojo's initial application for insurance, Mojo "specifically requested limits of $20,000/$40,000 for uninsured/underinsured motorist coverage, and rejected higher limits for that coverage." Thereafter, ASI took plaintiff's deposition and filed a motion for summary judgment. In turn, plaintiff filed a cross-motion for summary judgment.

¶ 7        In their respective motions, plaintiff and ASI did not dispute the underlying facts. As such, they agreed that ASI issued an original policy of automobile insurance to Mojo covering the period between June 8, 2007, and January 1, 2008 (policy C2 CM9093919-00). This policy originally provided a "combined single limit" (CSL) of $300,000 in bodily injury and property damage liability coverage. In the course of applying for this policy, Mojo's president was informed of Mojo's right to UM or UIM coverage in an amount equal to the bodily injury and property damage coverages. Mojo's president signed a written rejection of such coverage, and also acknowledged in writing that Mojo could "at any future date, by written request, increase this coverage." Therefore, the original policy only provided UM coverage in the amount of $20,000 per person and $40,000 per accident. It did not specifically provide for any coverage for UIM coverage.

¶ 8        That original policy was subsequently modified by a number of endorsements, including endorsements adding additional insured drivers and adding and removing specific insured vehicles. Of particular relevance, on or about October 1, 2007, ASI received a written "GENERAL REQUEST FORM" from Mojo. On that form, Mojo checked two boxes indicating that it was requesting an "Endorsement" that would "CHANGE" its coverage. Specifically, Mojo requested a "Change of Limits to 500 CSL." There was no request for increased UM or UIM coverage on this form. Pursuant to this request, ASI prepared an endorsement to the original policy–issued on October 3, 2007, but effective October 1, 2007–in which the bodily injury and property damage liability limits were both increased to $500,000. The amount of UM coverage was not altered.

¶ 9        When the original policy expired on January 1, 2008, ASI issued Mojo a subsequent "RENEWAL" policy covering the period from January 1, 2008, through January 1, 2009 (policy number C2 CM909319-01). This policy provided the same amount of liability (a $500,000 CSL) and UM coverage ($20,000 per person and $40,000 per accident) as the original policy, and it was this policy that was in effect at the time of the accident. Mojo did not sign another written rejection of higher UM or UIM coverage in connection with either the endorsement increasing the liability limits or the "RENEWAL" policy, nor did Mojo make a specific request for any additional UM or UIM coverage.

¶ 10       While plaintiff and ASI did not dispute these underlying facts, they did dispute their legal significance. In its motion for summary judgment, ASI contended that its underlying actions had fully complied with section 143a-2 of the Illinois Insurance Code (Insurance Code), which contains certain requirements with respect to UM and UIM coverage. 215 ILCS

5/143a-2 (West 2008). Specifically, ASI asserted that the provisions of section 143a-2 did not require Mojo to again reject higher UM or UIM coverage at the time of the endorsement or when the policy was renewed, despite the fact that the amount of liability coverage had been increased. Thus, the policy only provided a total of $40,000 in UM coverage at the time of the accident. That coverage was irrelevant to the accident at issue here because Mr. Pas was covered by a total of $200,000 in liability insurance.

¶ 11 Plaintiff argued that both the endorsement and the subsequent policy were "new policies." As such, plaintiff contended that section 143a-2 did indeed require Mojo to again reject higher UM and UIM coverage, both when the liability coverage limits were increased via endorsement and when the subsequent policy was issued with liability coverage limits that were higher than the original amounts. Because it was undisputed that no such rejection was made in connection with either the endorsement or the subsequent policy, plaintiff further asserted that section 143a-2 required that the policy be reformed to provide UM and UIM coverage in an amount equal to the $500,000 bodily injury liability limit.

¶ 12 On February 10, 2012, the circuit court entered both a written order and a written decision denying ASI's motion for summary judgment and granting summary judgment in favor of plaintiff on his cross-motion. The circuit court's ruling was largely based upon its decision to follow the reasoning contained in *Nicholson v. State Farm Mutual Automobile Insurance Co.*, 409 Ill. App. 3d 282 (2010). In that case, the Second District of the Illinois Appellate Court found, under different facts, that an earlier version of section 143a-2 required that insurers must again offer and must obtain a written rejection of higher UM coverage whenever there is a material change to an original insurance policy; more specifically, where there is an increase in the amount of liability coverage in a subsequent policy. *Id.* at 293. The circuit court therefore found that, because ASI had failed to comply with the provisions of section 143a-2 by obtaining a rejection of higher UM and UIM limits at the time of the endorsement increasing the amount of liability coverage in the original policy, the "RENEWAL" policy it issued to Mojo should be "reformed to set uninsured/underinsured motorist coverage limits at $500,000 to match the bodily injury liability limit."

¶ 13 The circuit court's written order indicated that its written decision "shall be a final and appealable order," and ASI filed a notice of appeal from the circuit court's orders on February 16, 2012. However, in an order entered on October 9, 2012, this court dismissed ASI's appeal for a lack of jurisdiction. *Alshwaiyat v. American Service Insurance Co.*, 2012 IL App (1st) 120555-U.

¶ 14 In that order, this court noted that while plaintiff had named both Mojo and ASI as defendants in the instant suit, only ASI had been served and only ASI filed an appearance. *Id*. ¶ 14. We further noted that Mojo was nevertheless still a "party" to this suit for purposes of Illinois Supreme Court Rule 304(a) (Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010)), which provides this court with jurisdiction over an appeal "taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both." Because the circuit court's February 10, 2012, written order only entered a judgment against ASI and because it did not include such a finding, we concluded that we did not have

jurisdiction over ASI's prior appeal. *Alshwaiyat*, 2012 IL App (1st) 120555-U, ¶¶ 15-17.

¶ 15 ASI thereafter filed a motion in the circuit court seeking a finding, pursuant to Rule 304(a), that would allow it to take an appeal from the circuit court's prior orders. On October 23, 2012, the circuit court entered an order "pursuant to Supreme Court Rule 304(a) that there is no just reason for delaying enforcement or appeal of this court's written DECISION and order filed February 10, 2012 and the handwritten order also entered February 10, 2012." ASI thereafter filed a timely notice of appeal from the orders entered by the circuit court on October 25, 2012. On November 28, 2012, we entered an order allowing the record and the briefs filed in the prior appeal to stand as the record and briefs in the instant appeal.

¶ 16                                II. ANALYSIS

¶ 17 On appeal, ASI contends that the circuit court incorrectly denied its motion for summary judgment and improperly granted plaintiff's cross-motion for summary judgment. We agree.

¶ 18                           A. Standard of Review

¶ 19 Summary judgment is appropriate only where the pleadings, depositions, admissions and affidavits, viewed in the light most favorable to the nonmovant, show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2008). "Where the parties file cross-motions for summary judgment, as they did here, they concede there are no genuine issues of material fact and invite the court to decide the questions presented as a matter of law." *Ruby v. Ruby*, 2012 IL App (1st) 103210, ¶ 13. "The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court which are appropriate subjects for disposition by way of summary judgment." *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993). Similarly, questions of statutory construction and the satisfaction of statutory requirements are also questions of law properly decided on a motion for summary judgment. *Pajic v. Old Republic Insurance Co.*, 394 Ill. App. 3d 1040, 1043 (2009). We review *de novo* both the circuit court's statutory interpretations and its entry of summary judgment. *Illinois Insurance Guaranty Fund v. Virginia Surety Co.*, 2012 IL App (1st) 113758, ¶ 15.

¶ 20                          B. Statutory Framework

¶ 21 While this appeal ultimately involves the specific requirements of section 143a-2 of the Insurance Code, we find that this provision must first be placed in its relevant statutory and historical context.

¶ 22 Thus, we first note that–subject to several exceptions not relevant here–the Illinois Safety and Family Financial Responsibility Law (Financial Responsibility Law) mandates that "[n]o person shall operate, register or maintain registration of, and no owner shall permit another person to operate, register or maintain registration of, a motor vehicle designed to be used on a public highway unless the motor vehicle is covered by a liability insurance policy." 625 ILCS 5/7-601(a) (West 2008). Such a liability policy "shall be issued in amounts no less than

the minimum amounts set for bodily injury or death" provided in section 7-203 of the Financial Responsibility Law (*id.*), and as such must provide liability coverage limits of "not less than $20,000 because of bodily injury to or death of any one person in any one motor vehicle accident and, subject to said limit for one person, to a limit of not less than $40,000 because of bodily injury to or death of 2 or more persons in any one motor vehicle accident" (625 ILCS 5/7-203 (West 2008)). As our supreme court has recognized, the "principal purpose of this state's mandatory liability insurance requirement is to protect the public by securing payment of their damages." *Progressive Universal Insurance Co. of Illinois v. Liberty Mutual Fire Insurance Co.*, 215 Ill. 2d 121, 129 (2005).

¶ 23    Nevertheless, a driver covered by such mandatory *liability* insurance is not similarly protected against damages caused by other drivers who may not possess similar insurance. Thus, the Insurance Code specifically requires that all policies of liability insurance must also provide UM insurance. 215 ILCS 5/143a(1) (West 2008). Such UM insurance must provide coverage limits that are, at a minimum, equal to the above-referenced statutory minimums contained in the Financial Responsibility Law. *Id.* This requirement is "intended to place the policyholder in substantially the same position he would occupy, so far as his being injured or killed is concerned, if the wrongful driver had had the minimum liability insurance required by the Financial Responsibility Act." *Ullman v. Wolverine Insurance Co.*, 48 Ill. 2d 1, 4 (1970).

¶ 24    Of course, there is nothing to preclude a motorist from obtaining a policy of insurance providing liability coverage in excess of the minimum amounts required by the Financial Responsibility Law. If an insured does obtain liability coverage in such greater amounts, however, section 143a-2 of the Insurance Code contains additional requirements with respect to both UM and UIM coverage. As this is the very section of the Insurance Code at issue here, we quote its relevant provisions at length. Those provisions state as follows:

"(1) Additional uninsured motor vehicle coverage. No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be renewed or delivered or issued for delivery in this State with respect to any motor vehicle designed for use on public highways and required to be registered in this State unless uninsured motorist coverage as required in Section 143a of this Code is included in an amount equal to the insured's bodily injury liability limits unless specifically rejected by the insured as provided in paragraph (2) of this Section. Each insurance company providing the coverage must provide applicants with a brief description of the coverage and advise them of their right to reject the coverage in excess of the limits set forth in Section 7-203 of The Illinois Vehicle Code. The provisions of this amendatory Act of 1990 apply to policies of insurance applied for after June 30, 1991.

    (2) Right of rejection of additional uninsured motorist coverage. Any named insured or applicant may reject additional uninsured motorist coverage in excess of the limits set forth in Section 7-203 of the Illinois Vehicle Code by making a written request for limits of uninsured motorist coverage which are less than bodily injury liability limits or a written rejection of limits in excess of those required by law. This election or rejection shall be binding on all persons insured under the policy. In those cases where the insured

has elected to purchase limits of uninsured motorist coverage which are less than bodily injury liability limits or to reject limits in excess of those required by law, the insurer need not provide in any renewal, reinstatement, reissuance, substitute, amended, replacement or supplementary policy, coverage in excess of that elected by the insured in connection with a policy previously issued to such insured by the same insurer unless the insured subsequently makes a written request for such coverage." 215 ILCS 5/143a-2(1), (2) (West 2008).

In addition, paragraph (4) of section 143a-2 provides that UIM coverage must be included in any policy "in an amount equal to the total amount of uninsured motorist coverage provided in that policy where such uninsured motorist coverage exceeds the limits set forth in Section 7-203 of the Illinois Vehicle Code." 215 ILCS 5/143a-2(4) (West 2008).

¶ 25 As our supreme court has generally summarized, section 143a-2 requires that "[u]ninsured-motorist coverage must be provided in an amount equal to the liability coverage, *unless the insured specifically rejects such additional coverage*. [Citation.] If the uninsured-motorist coverage limit exceeds the minimum liability limit required by the Financial Responsibility Law, the policy must also include underinsured-motorist coverage in an amount equal to the uninsured-motorist coverage. [Citation.]" (Emphasis added.) *Phoenix Insurance Co. v. Rosen*, 242 Ill. 2d 48, 57 (2011). Morever, our supreme court has also recognized that these statutory requirements for liability, UM, and UIM coverage all "serve the same underlying public policy: ensuring adequate compensation for damages and injuries sustained in motor vehicle accidents." *Id.* at 58.

¶ 26 However, the current requirement for mandatory UM and UIM coverage has resulted from a number of relevant legislative amendments over the years.[1] Thus, prior to a substantial rewrite in 1990, the statutory provision that is now codified as section 143a-2 only required insurance companies to *offer* UM and UIM coverage in an amount matching the insurance policy's liability limits. Pub. Act 86-1156, § 4 (eff. Aug. 10, 1990) (amending Ill. Rev. Stat. 1989, ch. 73, ¶ 755a-2).

¶ 27 Additionally, the statutory exception to the requirement to offer matching UM and UIM coverage–in those cases where an insured has previously rejected higher UM or UIM limits–originally applied only to "renewal or supplementary" policies. Pub. Act 81-1426, § 1 (eff. Sept. 3, 1980) (adding what is now section 143a-2 of the Insurance Code). That statutory exception was expanded to include "any renewal, reinstatement, reissuance, substitute, amended, replacement or supplementary" policies in a 1989 revision to the statute. Pub. Act 86-841, § 1 (eff. Jan. 1, 1990) (amending Ill. Rev. Stat. 1989, ch. 73, ¶ 755a-2). When, as noted above, this provision was subsequently changed from a requirement to *offer* matching

---

[1]While much of section 143a-2 refers only to the required amount of UM coverage, paragraph (4) specifically requires that UIM coverage be provided in the same amount where UM coverage exceeds the statutory minimums. 215 ILCS 5/143a-2(4) (West 2008); *Lee v. John Deere Insurance Co.*, 208 Ill. 2d 38, 44 (2003). Thus, when we collectively refer to the statutory requirements for both UM and UIM coverage in this opinion, we intend to incorporate the requirements of paragraph (4) into such references.

UM and UIM coverage to a requirement to *provide* such coverage, that expanded statutory exception was retained. Pub. Act 86-1156, § 4 (eff. Aug. 10, 1990) (amending Ill. Rev. Stat. 1989, ch. 73, ¶ 755a-2).

¶ 28 Finally, we note that prior to an amendment in 2004, the requirement contained in paragraph (1) of section 143a-2 for mandatory UM and UIM coverage in an amount equal to liability coverage applied "unless specifically rejected by the insured." Pub. Act 93-762 (eff. July 16, 2004) (amending 215 ILCS 5/143a-2(1), (2) (West 2004)). However, the 2004 amendment modified paragraph (1) to more clearly indicate that its requirements applied "unless specifically rejected by the insured *as provided in paragraph (2) of this Section*." (Emphasis added.) *Id.* The 2004 amendment also rewrote much of paragraph (2), which had previously required that "every application for motor vehicle coverage must contain a space for indicating the rejection of additional uninsured motorist coverage. No rejection of that coverage may be effective unless the applicant signs or initials the indication of rejection." *Id.*

¶ 29 C. Discussion

¶ 30 With this background in mind, we find that section 143a-2 did not require ASI to obtain another rejection of higher UM or UIM coverage limits in connection with either the endorsement increasing Mojo's liability limits or when the "RENEWAL" policy was issued. Thus, the failure to obtain such a rejection did not require reformation of the renewal policy to include $500,000 in UIM coverage.

¶ 31 As resolution of this appeal will require an interpretation of section 143a-2 of the Insurance Code, we first note:

"When construing a statute, our goal is to determine and effectuate the legislature's intent, best indicated by giving the statutory language its plain and ordinary meaning. [Citation.] We must consider the entire statute in light of the subject it addresses, presuming the legislature did not intend absurd, unjust, or inconvenient results. [Citation.] Reviewing courts will not depart from the statute's plain language by reading into it conditions, exceptions, or limitations that contravene legislative intent. [Citation.]" *In re Andrew B.*, 237 Ill. 2d 340, 348 (2010).

¶ 32 The statutory language of section 143a-2 clearly provides that the requirement for mandatory UM and UIM coverage in an amount matching an insurance policy's liability limits applies *only* when policies of liability insurance are "renewed or delivered or issued for delivery *** unless specifically rejected by the insured." 215 ILCS 5/143a-2(1) (West 2008). In this case, it is uncontested that–in compliance with the statutory requirements–Mojo specifically rejected UM and UIM insurance in excess of the statutory minimum in writing, after being informed of the availability of such coverage and prior to the time ASI initially delivered the original insurance policy (number C2 CM909319-00). As such, there is no dispute that the original policy delivered to Mojo did not initially provide UM or UIM coverage in excess of the minimum amount required by the Financial Responsibility Law.

¶ 33 Moreover, it is also undisputed that the liability limits contained in the original policy

-8-

were subsequently increased, during the nearly six-month term of the original policy, via an endorsement to that policy. Under the plain and ordinary meaning of the statutory language contained in section 143a-2, such an endorsement is not a separate "*polic*y *** renewed or delivered or issued for delivery." (Emphasis added.) 215 ILCS 5/143a-2(1) (West 2008). The Insurance Code defines a "Policy" as "an insurance policy or contract and includes certificates of fraternal benefit societies, assessment companies, mutual benefit associations, and burial societies." 215 ILCS 5/2(n) (West 2008). Illinois courts have long recognized that "an insurance contract includes the printed form policy, declarations, and any endorsements" (*Makela v. State Farm Mutual Automobile Insurance Co.*, 147 Ill. App. 3d 38, 46 (1986) (citing *Webster v. Inland Supply Co.*, 287 Ill. App. 567, 574 (1936))), and that endorsements do not themselves represent a completely new policy (*St. Paul Insurance Co. of Illinois v. Armas*, 173 Ill. App. 3d 669, 675 (1988)). Indeed, an endorsement has been defined as being merely an "amendment to an insurance policy; a rider." Black's Law Dictionary 607 (9th ed. 2009).

¶ 34    The endorsement at issue here merely modified a term of the original policy–a policy that had already been delivered by ASI to Mojo–and did so without changing any other policy terms, the policy number, or the original policy's duration. Thus, the requirements of section 143a-2(1) were not implicated at the time of the policy endorsement increasing the limits of liability coverage in the original policy.

¶ 35    Nevertheless, it was not the original policy of insurance that was in effect at the time of the accident at issue here. Rather, the policy in effect at that time was the subsequent "RENEWAL" policy (number C2 CM909319-01). Clearly, this policy was one that "renewed" the original policy, or at the very least was one that had been "delivered or issued for delivery" by ASI.[2] As such, the general requirements of section 143a-2(1) that UM and UIM coverage be provided in an amount matching the second policy's $500,000 liability limit were implicated at that time. 215 ILCS 5/143a-2(1) (West 2008).

¶ 36    Of course, if the general requirements of section 143a-2(1) were implicated by the second policy, so too was the statutory exception to those requirements. Indeed, as discussed above, paragraph (1) of section 143a-2 now clearly requires UM and UIM coverage limits matching a policy's liability limits, but only where such limits have not been "specifically rejected by the insured as provided in paragraph (2) of this Section." *Id.* Paragraph (2) explicitly allows any named insured to reject UM or UIM coverage in excess of the statutory minimums, and further provides that in such cases "the insurer need not provide in any renewal, reinstatement, reissuance, substitute, amended, replacement or supplementary policy, coverage in excess of that elected by the insured *in connection with a policy previously issued to such insured by the same insurer unless the insured subsequently makes a written request for such coverage*." (Emphasis added.) 215 ILCS 5/143a-2(2) (West 2008).

¶ 37    Again, here it is undisputed that Mojo rejected UM or UIM coverage in excess of the statutory minimums when applying for the original policy, and did not make a written request for any higher UM or UIM coverage in connection with the "RENEWAL" policy. Moreover,

---

[2]The exact nature of this policy will be discussed more fully below.

it is apparent from the record that both the original policy and the "RENEWAL" policy were issued to Mojo (the named insured) by ASI (the insurer). Therefore, *vis-à-vis* the "RENEWAL" policy, the amount of UM and UIM coverage Mojo elected in the original policy was a decision made "in connection with a policy previously issued to such insured by the same insurer." *Id.* The exception contained in paragraph (2) therefore clearly applies in this case, and ASI was not required to provide any greater UM or UIM coverage in the second policy so long as that policy was a "renewal, reinstatement, reissuance, substitute, amended, replacement or supplementary policy." *Id.*

¶ 38      These terms are not specifically defined in the Insurance Code, at least not with respect to section 143a-2. While the Insurance Code does contain a definition of the term "renewal," this definition only applies to certain other sections of the Insurance Code. See 215 ILCS 5/143.13(d) (West 2008). Nevertheless, "a term of well-known legal significance is presumed to have that meaning in a statute." *Nila v. Hartford Insurance Co. of the Midwest*, 312 Ill. App. 3d 811, 820 (2000) (citing *Advincula v. United Blood Services*, 176 Ill. 2d 1, 17 (1996)). Illinois courts have recognized that "the word 'renewal' commonly has been defined to mean '[t]he substitution of a new right or obligation for another of the same nature.' " *Nila*, 312 Ill. App. 3d at 820 (quoting Black's Law Dictionary 1296 (6th ed. 1990)); *Chatlas v. Allstate Insurance Co.*, 383 Ill. App. 3d 565, 570 (2008) (quoting Black's Law Dictionary 1165 (5th ed. 1979)); *Burnett v. Safeco Insurance Co. of Illinois*, 227 Ill. App. 3d 167, 173 (1992) (quoting Black's Law Dictionary 1165 (5th ed. 1979)).

¶ 39      In this case, the second policy was self-identified on its declaration page as being a "RENEWAL." It was further identified by a policy number largely identical to the number identifying the original policy, merely replacing policy number C2 CM909319-00 with number C2 CM909319-01. It was issued to Mojo, the same named insured was listed in the original policy, and it covered the same drivers insured in the original policy (as modified by a number of endorsements issued during the term of that policy). It contained policy language that was identical to the policy language contained in the original policy. Finally, it provided the same coverage limits as the original policy (again, as modified by the specific endorsement to that policy discussed above) and, by its own terms, came into effect upon the expiration of the roughly six-month term of the original policy. For all these reasons, it is evident that the second policy was indeed a "renewal" policy for purposes of the paragraph (2) of section 143a-2.

¶ 40      The only modification to the original policy that was made at the time it was renewed via the second policy was the inclusion of an additional insured vehicle. However, this change merely reinsured a vehicle that had been briefly removed from the original policy via an endorsement issued just a few weeks before the original policy expired. Indeed, not even plaintiff contends that this modification had any effect on the nature of the second policy. In light of the fact that this vehicle had been previously insured under the original policy, and considering all of the other similarities between the two policies, we do not find that this single modification alters our conclusion that the second policy constituted a renewal. It clearly represented " '[t]he substitution of a new right or obligation for another of the same nature.' " *Chatlas*, 383 Ill. App. 3d at 570 (quoting Black's Law Dictionary 1165 (5th ed. 1979)); see also *Makela*, 147 Ill. App. 3d at 49 (to view "the addition of a new car to an

existing policy [as] no more than a renewal of or supplementary to the original policy is the more reasonable interpretation of section 143a-2"). As such, section 143a-2(2) exempted ASI from the requirement contained in section 143a-2(1) to provide any greater UM or UIM coverage than the minimum amounts contained in the original policy.

¶ 41    We would come to a similar conclusion even if we were to agree with plaintiff and conclude that either the endorsement to the original policy or the second policy resulted in a "new" policy that could not be described as a renewal. As noted above, the statutory exception to the requirement for matching UM and UIM coverage was substantially expanded in a 1989 revision, and now also includes "*any \*\*\* substitute, amended, replacement or supplementary*" policies. (Emphasis added.) Pub. Act 86-841, § 1 (eff. Jan. 1, 1990); 215 ILCS 5/143a-2(2) (West 2008). To substitute is defined as to " 'put in the place of another person or thing; to exchange.' " *Burnett*, 227 Ill. App. 3d at 173 (quoting Black's Law Dictionary 1281 (5th ed. 1979)). To amend is to " 'change, correct, revise.' " *Id.* (quoting Black's Law Dictionary 74 (5th ed. 1979)). To replace is to " 'supplant with substitute or equivalent.' " *Id.* (quoting Black's Law Dictionary 1168 (5th ed. 1979)). Finally, supplementary has been defined to mean " '[a]dded as a supplement; additional.' " *Id.* at 174 (quoting Black's Law Dictionary 1290 (5th ed. 1979)). The statutory exception would therefore still apply, even accepting plaintiff's argument that either the endorsement or the second policy represented a "new" policy. Specifically, each could still be fairly described as one put in the place of the original policy ("substitute"), one which changed or revised the original policy ("amended"), one which supplanted the original policy as a substitute ("replacement"), or one which added additional coverage as a supplement to the original policy ("supplementary"), and the statutory exception clearly applies to "any" such policy.

¶ 42    In coming to this conclusion, we necessarily reject the heavy reliance both plaintiff and the circuit court have placed upon the decision issued by the Second District of the Illinois Appellate Court in *Nicholson*, 409 Ill. App. 3d at 285-86, which interpreted the language of section 143a-2 as it existed before the most recent 2004 amendment and under different circumstances.

¶ 43    In that case, the court considered a situation where the insureds' original policy–issued in 1988–provided $100,000 in liability coverage and $50,000 in UM coverage. *Id.* at 284. In connection with that original policy, the insureds had signed a "coverage selection form containing a brief explanation of UM and underinsured motorist coverage and stating that the [insureds] had been provided with the opportunity to purchase UM coverage in an amount equal to their liability coverage but that they instead had selected coverage with limits of $50,000 per person." *Id.* That original policy was repeatedly renewed at those coverage amounts until 1999. *Id.*

¶ 44    In 1999, 11 years later, the insureds made a request to increase their policy limits to $250,000 in liability coverage and $100,000 in UM coverage. The insurer treated this request as an "application" and issued a new policy at the requested coverage amounts. *Id.* As a result of this change, the premiums on the new policy increased by over 15%. *Id.* at 292. While the insurer requested that the insureds complete a new coverage selection form, that form was not signed until after the new policy was issued at the requested coverage amounts. *Id.* at 284. After this new policy was itself renewed several times, the insureds were fatally

injured in a 2003 accident with an uninsured motorist. When the insureds' estate made a claim for UM benefits under the insureds' policy, the insurer only paid the $100,000 limits the insureds had selected. *Id*. However, the estate claimed that because no valid rejection of UM coverage matching the liability limits was obtained before the 1999 policy was issued, the policy should be reformed to provide a full $250,000 in UM coverage pursuant to section 143a-2. The estate filed a declaratory judgment action, and the circuit court granted summary judgment in its favor and reformed the policy. *Id.*

¶ 45   The appellate court affirmed. *Id*. at 283. In doing so, the court rejected the insurer's reliance upon the "exception to the rule requiring insurers to offer UM coverage equal to liability coverage" in any renewal policy contained in paragraph (2) of section 143a-2. *Id*. at 289. As the appellate court framed the issue: "In the defendant's eyes, this exception means that it need not offer equal UM coverage on any policy that could possibly be described as a renewal, that is, any policy issued after the first one. In response, plaintiff argues that section 143a-2 reflects a legislative intent that, whenever there has been a material change to the terms of the previous policy, the later policy is not simply a renewal or similar continuation of the previous policy but instead must be seen as a new policy, and the insurer must again offer the insured UM coverage equal to the amount of liability coverage." *Id*.

¶ 46   The court ultimately agreed with the insureds on this issue, reasoning as follows:

"We agree that, in this regard, the language of the statute is somewhat ambiguous. Subsection (2) exempts renewals and similar subsequent policies from the rule requiring equal UM coverage, but subsection (1) plainly states that the rule applies to policies that are being renewed. ***

Inasmuch as subsection (1) of the statute states that equal UM coverage must be offered in connection with any policy that is 'renewed' in Illinois, it is plain that this requirement must apply to at least some renewal policies. Moreover, subsection (2)'s description of the policies exempted from the general rule–renewals, reinstatements, reissuances, replacements, and the like–indicates that in enacting subsection (2) the legislature was concerned with those policies that are essentially continuations of previous policies or that contain only minor changes. For instance, replacements, reinstatements, and reissuances generally mirror the terms of the original policy with at most a change in the effective date, and renewals generally contain only minor changes in terms such as the dates of coverage or cost of premiums. In addition, subsection (2) contains a further limitation, stating that it applies only when an insured has previously been offered equal UM coverage and has rejected it in favor of some lower coverage. [Citation.] We thus read subsection (2) as establishing an exception to the general rule of equal UM coverage that applies only where these two conditions are met: first, the insured has previously rejected equal coverage, and second, there are no substantial changes in the terms of the new policy being issued." *Id*. at 289-90.

In light of this conclusion, the court specifically found that "a change in the level of coverage, with its attendant change in the premium cost, is a material change that results in a new policy rather than a mere continuation of the old policy." *Id*. at 292. As such, "whenever liability coverage is increased above that provided under the previous policy,

insurers must again offer UM coverage equal to liability coverage and obtain a signed election declining such equal coverage." *Id*. at 293.

¶ 47 For a number of reasons, we do not find the decision in *Nicholson* to be controlling or persuasive in the context of this case. First, we note that the *Nicholson* decision contains references to a statutory requirement to "offer" UM coverage. However, after the original policy in that case was issued in 1988, and before the 1999 policy increasing coverage was issued, the language of section 143a-2 was modified to reflect a change from a requirement to *offer* matching UM and UIM coverage to a requirement to *provide* such coverage. Pub. Act 86-1156, § 4 (eff. Aug. 10, 1990) (amending Ill. Rev. Stat. 1989, ch. 73, ¶ 755a-2); *Pajic*, 394 Ill. App. 3d at 1047 (" 'No longer is the insurer responsible to make an offer, but rather it is the insured's duty to reduce the uninsured motorist coverage.' " (quoting *DeGrand v. Motors Insurance Corp.*, 146 Ill. 2d 521, 533 (1992))). Thus, the reasoning and analysis in *Nicholson* may, in part, have been guided by a perceived requirement to "offer" UM coverage in an amount matching liability limits that is no longer contained in section 143a-2. *Nicholson*, 409 Ill. App. 3d at 292-93 (noting that its decision was "consistent with the purpose of section 143a-2" because "[t]he legislature was concerned that without a mandatory *offer* of UM coverage, some insurers would not *offer* what an insured is willing to pay for." (Emphases added)).

¶ 48 Second, *Nicholson* specifically addressed whether or not to apply the exception to the requirements of section 143a-2(1) where the insureds' original liability limits were increased in a separate, subsequent policy. However, both the circuit court's decision–and plaintiff's arguments on appeal–seek to extend and apply *Nicholson*'s reasoning to the endorsement ASI issued raising the liability limits of the original policy.

¶ 49 As we discussed above, however, that endorsement was issued during the term of the original policy and was in fact a part of that original policy. Therefore, it did not constitute a separate insurance policy being "renewed or delivered or issued for delivery." 215 ILCS 5/143a-2(2) (West 2008). As we have concluded that section 143a-2 does not apply to that endorsement at all, *Nicholson*'s discussion about how to apply section 143a-2 where a subsequent policy's "liability coverage is increased above that provided under the *previous* policy" is wholly irrelevant. (Emphasis added.) *Nicholson*, 409 Ill. App. 3d at 293.

¶ 50 Moreover, to the extent that plaintiff also seeks to apply *Nicholson* to ASI's issuance of the renewal policy at issue here, we still find its reasoning inapplicable. As discussed above, the second policy merely incorporated the increased liability limits that had already been added to the original policy by the endorsement. As such, there were no "substantial changes in the terms of the new policy being issued" (*id*. at 290), and by its own reasoning *Nicholson* would not apply.

¶ 51 Third, we note that the discussion in *Nicholson* solely addressed the insurer's argument that the exception in paragraph (2) of section 143a-2 "means that it need not offer equal UM coverage on any policy that could possibly be described as a *renewal*." (Emphasis added.) *Id*. at 289. While the court did briefly note that section 143a-2(2) provided for an exception for "renewals, reinstatements, reissuances, replacements, and the like" (*id*. at 290), the clear focus of the decision was on whether the 1999 policy in question was one that could be

described as a renewal. Thus, the court in *Nicholson* never considered–as we do here–whether that policy might also be subject to the exception contained in section 143a-2(2) because it was a substitute, amended, or supplementary policy.

¶ 52    Finally, and more fundamentally, we note that the decision in *Nicholson* is grounded in the court's conclusion that the prior language of section 143a-2 was somewhat ambiguous because it was unclear exactly how paragraphs (1) and (2) of that section related to each other, or how the exception in paragraph (2) could be harmonized with the requirements of paragraph (1). *Id*. The court in *Nicholson* reconciled this perceived ambiguity by concluding that "in enacting subsection (2) the legislature was concerned with those policies that are essentially continuations of previous policies or that contain only minor changes," and thus the exception in paragraph (2) applied only where "there are no substantial changes in the terms of the new policy being issued." *Id*.

¶ 53    However, in that case the court was interpreting the statutory language of section 143a-2 as it existed prior to the 2004 amendments. *Id*. at 286-87. Again, the language of that section now includes both a substantial redraft of the exemption requirements of paragraph (2) and a specific reference to those redrafted requirements in paragraph (1). 215 ILCS 5/143a-2(1), (2) (West 2008). It is this amended language that is at issue in this case.

¶ 54    We conclude that our interpretation of that language best accomplishes the goal of determining and effectuating the legislature's intent, as we give the current language of section 143a-2 its plain and ordinary meaning. *In re Andrew B.*, 237 Ill. 2d at 348. Again, that statutory language clearly provides an exception for "*any* renewal, reinstatement, reissuance, substitute, amended, replacement or supplementary policy." (Emphasis added.) (215 ILCS 5/143a-2(2) (West 2008)). Were we to graft an additional requirement that any renewal, substitute, amended, replacement or supplementary policy not make any substantial or material changes onto the current language of the exception contained in section 143a-2(2), we would improperly "depart from the statute's plain language by reading into it conditions, exceptions, or limitations that contravene legislative intent." *In re Andrew B.*, 237 Ill. 2d at 348. We therefore reject plaintiff's reliance upon *Nicholson* in this case. We reiterate that ASI was not required to provide any greater UM or UIM coverage than the minimum amounts contained in the original policy, either in connection with the endorsement to the original policy or the subsequent renewal policy that was in effect at the time of the accident.

¶ 55                    III. CONCLUSION

¶ 56    For the foregoing reasons, we reverse both the circuit court's denial of ASI's motion for summary judgment and its judgment in favor of plaintiff on his cross-motion for summary judgment. Pursuant to our authority under Illinois Supreme Court Rule 366(a)(5) (Ill. S. Ct. R. 366(a)(5) (eff. Feb. 1, 1994)), we grant summary judgment in favor of ASI.

¶ 57    Reversed; judgment entered.