**IN THE COURT OF APPEALS OF IOWA**

No. 18-0692
Filed June 5, 2019

**LESTER DUNIGAN,**
        Plaintiff-Appellant,

**vs.**

**LIBERTY MUTUAL INSURANCE COMPANY d/b/a LIBERTY MUTUAL FIRE INSURANCE COMPANY,**
        Defendant-Appellee.
_____

        Appeal from the Iowa District Court for Polk County, Paul D. Scott, Judge.


        Lester Dunigan appeals the adverse summary judgment ruling on his claim

for underinsured motorist insurance coverage against Liberty Mutual Insurance

Company. **AFFIRMED.**



        Zachary C. Priebe and Jeff Carter of Jeff Carter Law Offices, P.C., Des

Moines, for appellant.

        Benjamin T. Erickson and Andrew D. Hall of Grefe & Sidney. P.L.C., Des

Moines, for appellee.



        Heard by Vogel, C.J., and Mullins and Bower, JJ.

**MULLINS, Judge.**

Lester Dunigan appeals the adverse summary judgment ruling on his claim for underinsured motorist coverage against Liberty Mutual Insurance Company (Liberty Mutual). He argues the district court erred by applying Illinois law to the insurance policy, contending the plain language of the policy requires the application of Iowa law. Further, he argues Liberty Mutual failed to obtain a written declination of underinsured motorist coverage as required by Iowa Code section 516A.1 (2014), which results in underinsured motorist coverage being read into his policy.

## I.      Background Facts and Proceedings

On October 8, 1997, Lester Dunigan and his wife Ella completed and signed an application for motor vehicle insurance covering multiple vehicles with Liberty Mutual. The application provided the insurance would commence at 12:01 a.m. on October 9. Dunigan's address on the application was in Rock Island, Illinois, and the application indicated that he provided an Illinois driver's license. The insurance coverage's liability limit for uninsured motorists was $20,000 to $40,000 with no coverage for underinsured motorists, as indicated by a line through the designated box. The application also included a provision that stated, "I reject uninsured and underinsured motorists coverage equal to my bodily injury liability limits and instead select the limits indicated on my option form." The box next to the line was not checked, but Dunigan's signature appears on the signature line immediately below the provision.

On a separate page noted as "3 of 5" and titled "Uninsured Motorists Property Damage Coverage," two options were provided "[i]f you <u>do not</u> have

Collision Coverage." Option 1 allowed for the election of coverage on specific vehicles. Option 2 was the rejection of coverage for all vehicles. Neither option was selected on the form. The form also included the following paragraph:

> I am aware, unless I indicate otherwise to Liberty Mutual in writing, that my coverage choices of Uninsured Motorists Coverage, Underinsured Motorists Coverage, and Uninsured Motor Vehicle Property Damage coverage shall apply throughout the policy period, regardless of any changes such as the replacement or addition of vehicles or drivers, and to all renewals, amendments, replacements or reinstatements of this policy.

Dunigan signed his name on the signature line below the paragraph. A fourth form, noted "Dunigan" and "4 of 5" at the top, provided:

> We recommend that you maintain UNINSURED MOTORISTS COVERAGE limits equal to your bodily injury limits. . . .
> Please be aware that any summary of coverage on these pages is necessarily general in nature. **Your policy contains specific definitions, exclusions, terms, and conditions.** In case of any conflict, your policy language will control the resolution of any coverage questions. If you have any questions about this coverage or its cost, please contact your local Liberty Mutual Sales Office *before* completing this form.
> Listed below are the available single and separate limits of UNINSURED and UNDERINSURED MOTORISTS COVERAGE and the applicable premium for each. Please check the box next to the limits you wish to select.

The form allowed Dunigan the option to either: (1) "elect Uninsured Motorists Bodily Injury Coverage at the minimum financial responsibility limits required by Illinois law. ($20,000 per person and $40,000 per accident)" or (2) "elect an Uninsured Motorists Bodily Injury Coverage limit and Underinsured Motorists Bodily Injury Coverage limit **equal** to or **lower** than the liability limit of my policy." The second option included a note: "The charges for all Limits below include both Uninsured Motorists Bodily Injury Coverage and Underinsured Motorists Bodily Injury Coverage." The first option was marked on the form. There were no initials

or signature on the page. The record provides that the insurance policy was renewed yearly, including on October 9, 2014.

On February 9, 2015, Dunigan was involved in a traffic accident at the intersection of 19th Street and College Avenue in Des Moines. Dunigan was driving north on 19th Street, a one-way street. A driver heading east on College Avenue stopped at the stop sign at the intersection with 19th Street and continued through the intersection but failed to yield to Dunigan as he proceeded through the intersection. There was no stop sign for traffic heading north on 19th Street at the intersection. The driver hit Dunigan on the driver's side. The police report identified that both vehicles sustained minor damage and the other driver took complete responsibility for the accident. The accident form listed Rock Island, Illinois as both Dunigan's home and vehicle registration address. Dunigan's driver's license was listed as an Illinois license.

Following the accident, Dunigan settled his claim against the other driver for the liability policy limits of the other driver's auto insurance policy. Dunigan filed suit against Liberty Mutual in February 2017 to recover under the uninsured and underinsured motorist benefits provisions of his insurance policy. He claimed his sustained damages exceeded the liability limits of the other driver's insurance policy. In November, Liberty Mutual moved for summary judgment. It claimed Illinois law applied and under Illinois law, because Dunigan elected to carry only the statutory minimum amount of uninsured motorist insurance coverage, it was not contractually obligated to provide underinsured motorist coverage. Further, it was not required to ask for or obtain a rejection each time the policy came up for renewal. Dunigan resisted the motion, arguing that Iowa law applied and, under

Iowa Code section 516A.1, underinsured coverage must be read into his policy because Liberty Mutual failed to obtain his written rejection of the coverage.

The court heard the motion in January 2018 and filed its ruling in April. The court identified that the only issue before it was "whether Illinois law or Iowa law governs the insurance policy at issue." The district court found there was no choice-of-law provision in the insurance policy, therefore it applied the "most significant relationship" test to determine which state's laws governed the policy. *See Gabe's Constr. Co. v. United Capitol Ins. Co.*, 539 N.W.2d 144, 146 (Iowa 1995); *see* also Restatement (Second) of Conflict of Laws § 188(1)–(2) (Am. Law Inst. 1971). The district court concluded, even when viewing the facts in the light most favorable to Dunigan, Illinois law controlled the policy. It found that under Illinois law, Dunigan properly rejected underinsured motorist coverage when he applied for the initial insurance policy, continued to reject the coverage when renewing the policy, and consequently, he did not have underinsured motorist coverage at the time of the accident. Based upon its findings, the court granted Liberty Mutual's motion for summary judgment. Dunigan appeals.

## II. Standard of Review

"We review grants of summary judgment for correction of errors at law." *United Suppliers, Inc. v. Hanson*, 876 N.W.2d 765, 772 (Iowa 2016). Further, "the interpretation of an insurance policy is a matter of law," and consequently, our review "is for errors at law." *Greenfield v. Cincinnati Ins. Co.*, 737 N.W.2d 112, 117 (Iowa 2007).

"Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."

*Hanson*, 876 N.W.2d at 772. In reviewing a district court's determination that the defendants met their burden under this standard, "we view the evidence in a light most favorable to the nonmoving party." *Merriam v. Farm Bureau Ins.*, 793 N.W.2d 520, 522 (Iowa 2011) (quoting *Langwith v. Am. Nat'l Gen. Ins. Co.*, 793 N.W.2d 215, 218 (Iowa 2010)). "In deciding whether there is a genuine issue of material fact, the court . . . afford[s] the nonmoving party every legitimate inference the record will bear." *Kern v. Palmer Coll. of Chiropractic*, 757 N.W.2d 651, 657 (Iowa 2008) (alteration in original) (quoting *Smidt v. Porter*, 695 N.W.2d 9, 14 (Iowa 2005)).

### III. Analysis

#### A. Applicable Law

Dunigan asserts the district court erred in failing to consider the plain language of his insurance policy when determining whether Iowa law applies to his insurance policy. He further argues his ties to Iowa and his understanding of the insurance policy require the application of Iowa law.

In support of its ruling, the district court cited *Gabe's Construction Company v. United Capitol Insurance Company, ,* which stated that we look to "intent of the parties or the most significant relationship" when determining "choice-of-law issues in insurance policy cases." 539 N.W.2d at 146. "In the absence of a choice-of-law clause in the policy, the rights of the parties are determined by the law of the state which 'has the most significant relationship to the transaction and the parties.'" *Id.* (quoting Restatement (Second) of Conflict of Laws § 188(1)).

Dunigan argues that the out-of-state provision in his insurance policy operates as a general choice-of-law provision and therefore Iowa law should apply to determine Liberty Mutual's coverage obligations. The provision requires:

> If an auto accident to which this policy applies occurs in any state or province other than the one in which "your covered auto" is principally garaged, we will interpret your policy for that accident as follows:
> A. If the State or province has:
> . . . .
> 2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state . . ., your policy will provide at least the required minimum amounts and types of coverage.

Dunigan contends that Iowa law requires a written rejection of underinsured motorist coverage, pursuant to Iowa Code section 516A.1,[1] and given that he

---

[1] Section 516A.1 reads as follows:

> No automobile liability or motor vehicle liability insurance policy insuring against liability for bodily injury or death arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, unless coverage is provided in such policy or supplemental thereto, for the protection of persons insured under such policy who are legally entitled to recover damages from the owner or operator of an uninsured motor vehicle or a hit-and-run motor vehicle or an underinsured motor vehicle because of bodily injury, sickness, or disease, including death resulting therefrom, caused by accident and arising out of the ownership, maintenance, or use of such uninsured or underinsured motor vehicle, or arising out of physical contact of such hit-and-run motor vehicle with the person insured or with a motor vehicle which the person insured is occupying at the time of the accident. Both the uninsured motor vehicle or hit-and-run motor vehicle coverage, and the underinsured motor vehicle coverage shall include limits for bodily injury or death at least equal to those stated in section 321A.1, subsection 11. The form and provisions of such coverage shall be examined and approved by the commissioner of insurance.
> However, the named insured may reject all of such coverage, or reject the uninsured motor vehicle (hit-and-run motor vehicle) coverage, or reject the underinsured motor vehicle coverage, by written rejections signed by the named insured. If rejection is made on a form or document furnished by an insurance company or insurance producer, it shall be on a separate sheet of paper which contains only the rejection and information directly related to it. Such coverage need not be provided in or

provided no written rejection of the coverage to Liberty Mutual, the coverage must be read into his policy.

The district court determined the out-of-state clause in Dunigan's insurance policy did not constitute a choice-of-law provision. On our review of the record, we agree. We find that the provision highlighted by Dunigan does not amount to an agreement that the law of Iowa would apply to this case.

> An examination of the language contained in the "out of state" coverage provision of the instant policy reveals that it was not intended to be a choice of law provision. Indeed, the provision contains no language mandating that the policy be interpreted according to the law of the state where the accident occurred. Rather, the plain language of the "out of state" coverage provision provides that, in the event an accident occurs in a state that has a financial responsibility or compulsory insurance law that requires certain minimal amounts and types of coverage, [Liberty Mutual] would provide that coverage to its insured.

*W. States Ins. Co. v. Zschau*, 698 N.E.2d 198, 201 (Ill. App. Ct. 1998). Further, we find there is no other choice-of-law provision in Dunigan's policy. Accordingly, as there is no choice-of-law clause in the policy, we must look at which state "has the most significant relationship to the transaction and the parties." *Gabe's Constr.*, 539 N.W.2d at 146. We consider:

> (a) the place of contracting,
> (b) the place of negotiation of the contract,
> (c) the place of performance,
> (d) the location of the subject matter of the contract, and
> (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

---

supplemental to a renewal policy if the named insured has rejected the coverage in connection with a policy previously issued to the named insured by the same insurer.

Restatement (Second) of Conflict of Laws § 188(2). Further, we must consider these contacts "according to their relative importance with respect to the particular issue." *Id.* Additionally,

> The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship.

*Gabe's Constr.*, 539 N.W.2d at 146–47 (quoting Restatement (Second) of Conflict of Laws § 193). Liability and collision insurance are included in the various types of casualty insurance. Restatement (Second) of Conflict of Laws § 193 cmt. a.

In this matter, the insurance policy was contracted for and made in Illinois. The vehicles covered in the policy were all licensed and registered in Illinois at the time of the application. The vehicle involved in the accident was licensed and registered in Illinois at the time of the accident. Dunigan's driver's license is also from Illinois.[2] Dunigan's address on the 1997 initial application form, 2014 renewal declaration page, and the 2015 accident report are all listed as the same Illinois address. Additionally, both the application and renewal forms make reference to Illinois. The application includes an option for uninsured motorist coverage at the minimum levels "required by Illinois law." The renewal contains a list of "Endorsements-Changes to Your Policy" which includes "Amend of Policy Provisions-Illinois."

---

[2] We note the Illinois driver's license number listed on the 2015 accident report is the same one listed on the initial insurance application from 1997. However, the 2014 insurance policy renewal declarations form indicates an Iowa driver's license number.

Though Dunigan indicated in his brief that two of the vehicles listed in his insurance policy were licensed in Iowa at the time of the accident, the record does not reflect such information. The 2014 policy renewal declarations page lists the vehicles covered by the insurance policy but only provides each vehicle's make, model, and vehicle identification number. It does not provide the state where each vehicle is registered and licensed.

Further, while Dunigan argues that he had resided in Iowa for two years at the time of the accident and "Liberty Mutual was well aware of Mr. Dunigan's connection to the state of Iowa," the record does not reflect such information. There is no record of communication between the parties that reflects Dunigan provided Liberty Mutual with an Iowa address or which, if any, vehicles were primarily garaged in Iowa. There is also nothing in the record that indicates either party believed Iowa was to be the "principal location of the insured risk." Based upon our review of the record, we find that Illinois has the most significant relationship to the transaction and the parties. Accordingly, the district court was correct in applying Illinois law to Dunigan's insurance policy.

B.      Underinsured Coverage

With some exceptions not applicable to this matter, Illinois law "requires liability insurance coverage for all motor vehicles designed to be used on a public highway." *Thounsavath v. State Farm Mut. Auto. Ins. Co.*, 104 N.E.3d 1239, 1244 (Ill. 2018). Insurance policies must contain specific minimum liability amounts. *Id.* At the time Dunigan submitted his insurance application and at the time of the 2014 policy renewal, the minimum liability coverage limit was

not less than $20,000 because of bodily injury to or death of any one person in any one motor vehicle accident and, subject to said limit for one person, to a limit of not less than $40,000 because of bodily injury to or death of 2 or more persons in any one motor vehicle accident.

*Alshwaiyat v. Am. Serv. Ins. Co.*, 986 N.E.2d 182, 188 (Ill. App. Ct. 2013) (quoting 625 Ill. Comp. Stat. 5/7–203 (2008)).[3]

However, "a driver covered by such mandatory *liability* insurance is not similarly protected against damages caused by other drivers who may not possess similar insurance." *Id.* Therefore, Illinois law "specifically requires that all policies of liability insurance must also provide [uninsured motorist] insurance," which "must provide coverage limits that are, at a minimum, equal to the above-referenced statutory minimums contained in the Financial Responsibility Law." *Id.* While there is a statutory minimum amount of uninsured motorist coverage required in each policy, "there is nothing to preclude a motorist from obtaining a policy of insurance providing liability coverage in excess of the minimum amounts required." *Id.*

"If the limits for the insured's liability coverage exceed the minimum amounts required by law, the uninsured motorist provisions must provide the same higher coverage amounts unless the excess amount is specifically rejected by the insured." *Thounsavath*, 104 N.E.3d at 1244. Insureds and insurance applicants can reject the additional uninsured motorist coverage by making a written request for their coverage to be less than their bodily injury liability limits or providing a

---

[3] We note that as of January 1, 2015, the minimum bodily injury liability limits increased to $25,000 person and $50,000 per accident, thus increasing the statutory minimum amount of uninsured motorist coverage. 625 Ill. Comp. Stat. 5/7-203 (2015). However, the increase applies only to policies issued or renewed on or after January 1, 2015. *Id.*

written rejection of coverage in excess of the minimum statutory requirements. *See* 215 Ill. Comp. Stat. 5/143a-2(2) (2015).

In order to reject additional uninsured motorist coverage, the rejection must meet certain statutory requirements. At the time Dunigan submitted his insurance application, Illinois law required "every application for motor vehicle coverage must contain a space for indicating the rejection of additional uninsured motorist coverage." 215 Ill. Comp. Stat. 5/143a-2(2) (1997). Further, the rejection of the additional coverage was not effective "unless the applicant signs or initials the indication of rejection." *Id.* Once an insured either elects to purchase uninsured motorist coverage limits less than their bodily injury liability coverage or rejects limits greater than required by statute, the insurance company is not required to provide that coverage in "any renewal, reinstatement, reissuance, substitute, amended, replacement or supplementary policy" unless the insured makes a written request. *Id.* The initial application, including copies of the original application, "indicating the applicant's selection of uninsured motorist coverage limits [constituted] sufficient evidence of the applicant's selection of uninsured motorist coverage limits and shall be binding on all persons insured under the policy." *Id.* § 5/143a-2(3).

By the time of the 2014 renewal of Dunigan's insurance and the 2015 accident, Illinois had revised the statute enumerating the requirements for rejecting additional uninsured motorist coverage. Illinois law now requires motor vehicle insurance policies to include uninsured motorist coverage in an "amount equal to the insured's bodily injury liability limits unless specifically rejected by the insured as provided in paragraph (2)." 215 Ill. Comp. Stat. 5/143a-2(1) (2015). Paragraph

two requires insureds and insurance applicants to submit a "written request for limits of uninsured motorist coverage which are less than bodily injury liability limits or a written rejection of limits in excess of those required by law." *Id.* § 5/143a-2(2). The law no longer requires insurance applications to include a space to indicate the rejection or additional coverage or a signature or initialization of the rejection. *Compare* 215 Ill. Comp. Stat. Ann. 5/143a-2(2) (1997), *with* 215 Ill. Comp. Stat. Ann. 5/143a-2(2) (2015). "If the insured's uninsured motorist coverage limit exceeds the minimum liability limit required by the Financial Responsibility Law, the policy must also include underinsured motorist coverage in an amount equal to the uninsured motorist coverage." *Thounsavath*, 104 N.E.3d at 1244–45 (citing 215 ILCS 5/143a–2(4) (2012)). "In contrast to the uninsured motorist provision, the underinsured motorist provision does not include a right of rejection." *Id.* at 1245.

Here, Dunigan and Liberty Mutual contracted for liability insurance in the amounts of $100,000 per person and $300,000 per accident. This exceeded the minimum statutory limits. "Pursuant to section 143a of the Insurance Code, [Liberty Mutual] was required to include uninsured motorist coverage in those amounts in [Dunigan's] policies unless [Dunigan] specifically rejected the higher coverage amounts." *Id.* at 1247–48. At the time Dunigan submitted his insurance application in 1997, the application contained a section that stated, "I reject uninsured and underinsured motorists coverage equal to my bodily injury liability limits and instead select the limits indicated on my option form." Dunigan signed on the signature line directly below this statement. On page three of the application, Dunigan signed underneath a paragraph that stated:

> I am aware, unless I indicate otherwise to Liberty Mutual in writing, that my coverage choices of Uninsured Motorists Coverage, Underinsured Motorists Coverage, and Uninsured Motor Vehicle Property Damage coverage shall apply throughout the policy period, regardless of any changes such as the replacement or addition of vehicles or drivers, and to all renewals, amendments, replacements or reinstatements of this policy.

On page four, option one is selected. This option stated, "I elect Uninsured Motorists Bodily Injury Coverage at the minimum financial responsibility limits required by Illinois law. ($20,000 per person and $40,000 per accident.)."

We find the selected options and Dunigan's signatures meet the requirements to reject additional uninsured motorist coverage above Dunigan's selected bodily injury liability limits and reject a limit in excess of what Illinois law required at that time. As such, the original policy delivered to Dunigan did not provide uninsured motorist coverage above the statutory minimum. Accordingly, because Dunigan's uninsured motorist coverage did not exceed the statutory minimum required by law, underinsured motorist coverage was not required to be included in the policy at the time of the application. The application clearly provided no underinsured motorist coverage was included in the policy.

At the time of the 2014 insurance renewal and the 2015 accident, Dunigan's coverage for liability, medical payments, and uninsured motorists remained the same as it was on the 1997 application. The statutory minimum amount of coverage also remained the same. Since Dunigan "elected to purchase limits of uninsured motorist coverage which are less than bodily injury liability limits or to reject limits in excess of those required by law," Liberty Mutual was not required to provide in any renewal "coverage in excess of that elected by the insured in connection with a policy previously issued to such insured by the same insurer

unless [Dunigan] subsequently [made] a written request for such coverage." 215 Ill. Comp. Stat. 5/143a-2(2) (2014). There is no such written request by Dunigan in the record. Again, because Dunigan's motorist coverage did not exceed the statutory minimum required by law at the time of the renewal or the accident, underinsured motorist coverage was not required to be included in the policy.[4] Therefore, Dunigan did not have underinsured motorist coverage at the time of the accident and cannot recover such benefits under his policy. Accordingly, we affirm the district court's grant of Liberty Mutual's motion for summary judgment.

**AFFIRMED.**

---

[4] Dunigan's renewal form states: "Where no premium is shown, you have not purchased the indicated coverage for that vehicle." There is no premium listed for underinsured coverage on the renewal form.